**James Edward EHL, Petitioner-Appellee,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellant.**

No. 80–1310.

United States Court of Appeals, Fifth Circuit. Unit A

Sept. 14, 1981.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

George Whittenburg (Court-appointed), David Christopher Mullin, Amarillo, Tex., for petitioner-appellee.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

I.

Appellant James Edward Ehl (or Ehl) was first indicted in the Texas Court on December 30, 1975, for passing a forged instrument. While he was awaiting trial on this charge, Ehl was charged with the felony offense of escape from jail. Faced with the status of an habitual offender which carries with it an automatic sentence of life imprisonment, plea bargaining ensued. In exchange for the prosecutor's agreement not to seek habitual offender status, Ehl waived indictment on the escape charge, agreed to be tried by information for the offense of escape from jail and pleaded guilty to both charges and waived appeal. Pursuant to the plea agreement, he received two five year *concurrent* sentences.

While waiting to be transferred to the Texas Department of Corrections, Ehl wrote a letter [1] on June 1, 1977, to the trial judge indicating his desire to appeal his conviction on the escape charge, and asserting that (i) the prosecutor had offered a lower sentence on the forgery charge before the escape had occurred, (ii) his guilty pleas were coerced because, after the escape, the prosecutor threatened enhanced punishment if Ehl refused to plead guilty, and (iii) he had a valid defense in the escape case

---

1. Ehl's handwritten letter stated:

Honorable Judge Gulley,

Sir, this is a formal notice that I am filing for appeal and petition for you to appoint me a appeal lawyer and have an appeal bond set.

The following are partial grounds that I will be filing in my brief.

1. Originally Mr. Shuval offered me 16 months on a forgery charge, to be served here in the Deaf Smith County Jail; then take me to court and have me sentenced to two (2) years, which I would be taken to Huntsville and be immediately discharged.

2. Mr. Shuval coerced me into taking one five (5) year sentence on the forgery charge and one five (5) year sentence on the escape charge, to run concurrently. He stated if I didn't pled guilty and fought it he was going to see to it I received a ten (10) year sentence.

3. I was charged and sentenced to five (5) years for felony escape but actually all it was was breach of trust; to wit; as a trusty, while outside, I merely walked off. A person charged with escape (felony escape) really has no business being a trusty.

There was extenuating circumstances involved in my "escape".

6/1/77

James Edward Ehl'
Resident Deaf Smith County Jail

that he wished to raise. Sensitive to these charges, which did not implicate any actions of the trial judge or, for that matter, any actions by the prosecutor, the Judge held an evidentiary hearing on June 3, 1977, at which time the Judge in his discretion allowed Ehl to (i) withdraw his guilty plea on the escape charge on which he would have to stand trial, and (ii) appeal his conviction on the forgery charge which was based on his unchallenged guilty plea.

The appeal of his forgery conviction based upon his valid, unquestioned guilty plea resulted in an affirmance by the Texas Court of Criminal Appeals on November 2, 1977. *See Ehl v. State of Texas,* 557 S.W.2d 123 (Tex.Cr.App.1977) (unpublished opinion). With the trial court allowing him to withdraw his earlier guilty plea to the escape charge, he was faced with standing trial. A grand jury indicted him on October 5, 1977, charging the primary offense of escape from jail and alleging two prior felony convictions for enhancement. *See* Tex. Penal Code Ann. § 12.42(d). Hence, the prosecutor's initial intention made in earlier plea negotiations that he would seek the maximum possible punishment for escape if Ehl contested his guilt was, in fact, carried out.

Ehl went to trial on January 11, 1978, on the escape indictment with enhanced charges. While the jury was deliberating, Ehl and the prosecutor entered into a second plea agreement. This agreement provided that if the jury found Ehl guilty of escape, the enhancement counts would once again be waived and a sentence of ten years would be recommended to commence when Ehl completed his time for the now affirmed forgery conviction.

The jury did return a guilty verdict on January 11, 1978. Upon assurance that Ehl understood the terms of the plea bargain, the Court sentenced him for not less than two nor more than ten years consecutive to his forgery sentence. In short, Ehl had traded guilty pleas with no appeals and concurrent five year sentences, for one unsuccessful appeal, one unsuccessful trial following a plea of not guilty and a *consecutive* sentence of five and ten years respectively.

Displeased with this outcome, Ehl exhausted state habeas remedies and filed a federal writ alleging that the increased charges in the new indictment, which resulted in an increased sentence, constituted prosecutorial and judicial vindictiveness. Ehl's habeas corpus was granted by the Federal District Court.

In reaching the decision to grant the writ, the District Court, relying principally on the case of *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)[2], found that because the charges in the enhanced indictment were more serious than those originally alleged after Ehl had exercised his right to a trial, the second indictment posed a reasonable likelihood of prosecutorial vindictiveness. This placed on the State, according to the Court, the burden of showing that the prosecutor's motives were *not* vindictive, and since the State had failed to meet this burden, Ehl had been denied due process. This was compounded by the trial court's failure, as required under *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)[3], to place in the record objective information that would

---

**2.** In *Blackledge,* the defendant was charged in the District Court of North Hampton County as a *misdemeanor assault with a deadly weapon.* He was convicted and given a six-month sentence. On defendant's filing a notice of appeal to the North Hampton County Superior Court, in which he was entitled to a trial de novo, the prosecutor obtained a grand jury indictment charging him with the felony of assault with a deadly weapon with intent to kill. The defendant pleaded guilty and was sentenced to five to seven years.

**3.** In *Pearce,* the defendant was convicted of assault with intent to commit rape, and was sentenced to prison for a term of 12 to 15 years. Several years later his conviction was reversed. He was then retried, convicted, and sentenced to an eight-year prison term, which, when added to time he had already spent in prison amounted to a longer sentence than that originally imposed. The Supreme Court affirmed a judgment granting habeas corpus to Pearce because the increased sentence after a new trial created a fear on the part of defendant or apprehension of vindictiveness.

support a sentence increase for the same offense, thus constituting judicial vindictiveness. This appeal challenges those charges of prosecutorial and judicial vindictiveness that led to the Court's granting of Ehl's habeas relief.

## II.

■ Ehl, as did the District Court, relies on the general principle announced in *Blackledge* and *Pearce* (*see* notes 2, 3, *supra*) that once a prosecutor changes his formal plea bargaining position following a conviction, and the defendant exercises a constitutional right to challenge that conviction, a presumption of prosecutorial vindictiveness arises. *Blackledge*, 417 U.S. 27, 94 S.Ct. at 2102, 40 L.Ed.2d at 634. Ehl then argues that even though he belatedly rejected the State's original plea bargaining, the State, nevertheless, should have been bound by the original terms of the plea bargain in the subsequent proceedings. A contrary result, as *Blackledge* predicts, would create in future defendants an apprehension that the State would retaliate against their exercise of constitutional or statutory rights. Since the enhancing indictment in the present case carried a potential maximum punishment of life imprisonment, a presumption of prosecutorial vindictiveness was present. Consequently, the argument runs, it was then incumbent on the State to rebut this presumption which it failed to do.[4]

Ehl's reliance on *Pearce* and *Blackledge* and their progeny is misplaced. Those cases involved a situation where there had been an appeal of a contested trial, unlike the present situation in which Ehl has not claimed any error by the trial court in the original guilty plea hearing. Furthermore, this Court, sitting en banc in *Frank v. Blackburn*, 646 F.2d 873 (5th Cir. 1980) has

cast doubt on the applicability of *Pearce* in plea bargaining situations. "We find the rule of *North Carolina v. Pearce* to be completely inapplicable to post-plea bargaining sentencing proceedings. *Accord, Martin v. Blackburn*, 606 F.2d 92, 93 (5th Cir. 1979), *cert. denied*, 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980) ('it is highly questionable whether *Pearce* applies to plea bargaining situations')", *Frank*, 646 F.2d at 883. The En Banc Court reasoned that if "a defendant can successfully demand the same leniency in exchange for a guilty plea, all the incentives to plea bargaining disappear; the defendant has nothing to lose by going to trial." *Id.*[5]

In light of this pronouncement in *Frank* and the facts of the present case, we find *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) more analogous than either *Pearce* or *Blackledge*. In *Bordenkircher* the prosecutor offered to recommend a five year prison sentence if the defendant would plead guilty to a forgery indictment. The prosecutor further made it clear that he would reindict the accused under the State's habitual offender act if he chose to plead not guilty. *Bordenkircher*, 434 U.S. at 358, 98 S.Ct. at 665, 54 L.Ed. at 607. The defendant in that case chose to stand trial and the prosecution carried out its expressed purpose. The Supreme Court concluded that there was no due process violation when the prosecutor carried through with promised terms which the accused was aware of during plea negotiations, but which he ultimately chose to reject. In explaining the rationale for its holding, the Court distinguished *Pearce* and *Blackledge*, stating:

In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different

4. The Fifth Circuit cases of *Jackson v. Walker*, 585 F.2d 139 (5th Cir. 1978) and *Hardwick v. Doolittle*, 558 F.2d 292 (5th Cir. 1977) have interpreted *Blackledge* to require under certain circumstances that the State justify a harsher sentence on retrial.

5. It is significant to note that the dissenters in *Frank*—with the possible exceptions of Judges Rubin and Randall, who were the only Judges to criticize the plea bargaining process itself— did so on the basis of the trial judge's involvement in the plea bargaining process. We do not have that concern in Ehl's case. Even if we did, *Frank* openly upheld such involvement.

from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.' *Parker v. North Carolina*, 397 U.S. 790, 809, 90 S.Ct. 1458 [1479–80], 25 L.Ed.2d 785 (opinion of Brennan, J.).

\* \* \* \* \* \*

But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

*Bordenkircher*, 434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610–11.

■ A crucial inquiry that we glean from *Bordenkircher*, therefore, is whether the ac-cused was aware of and knew the price of rejecting the bargain. We find the record before us clear on this point. As reflected at the evidentiary hearing the possibility of a lengthier sentence due to likely enhanced charges was communicated to Ehl and his attorney in the initial plea bargaining stages.[6]

■ Further, as *Bordenkircher* stresses, a prosecutor has a good deal of leeway to induce defendants to forego their rights to plead not guilty[7]. The State's interest in inducing Ehl to plead guilty, subsequent to the Court's allowing him to stand trial after he effectively withdrew his guilty plea, was identical to its interest prior to his aborted guilty pleas. At this stage of the process,

---

**6.** Q. [By Assistant Attorney General Sutton] Mr. Shuval, [the prosecuting district attorney] let me go back to the original plea bargain agreement revolving around Cause No. 2821, Cause No. 2572. During the course of those plea bargaining arrangements, did you have an opportunity to discuss with Mr. Ehl and/or his counsel at that point in time the possibility of his being indicted on the escape charge, sir?
A. Mr. Ehl was indicted for 2572 for forgery and passing at the time of his escape.
Q. Okay.
A. ... And at that time I informed Mr. Easterwood [Ehl's counsel] that I intended to seek habitual indictment against him. I felt very strongly ... we had had a lot of jail escapes and I feel very strongly about escape.
Q. That was prior to his plea of guilty in Cause No. 2821?
A. Right. Then Mr. Easterwood, at the request of the sheriff, because of problems that the sheriff was having with Mr. Ehl, and the general running of the jail, he asked me if I wouldn't accept and get Mr. Ehl, down and out of his hair; and on that basis I did agree to forgo seeking habitual indictment and to accept a five-year sentence.

\* \* \* \* \* \*

Q. Okay. Following the granting of a new trial in Cause No. 2821, did you then go forth with your promise to indict Mr. Ehl as an habitual?
A. Well, I figured that if he didn't want to plea bargain, then I wasn't bound by it either, that I could do what I wanted to do originally.
Q. So then you did do what you originally wanted to do, which was indict him as an habitual?
A. Yes, what I had planned to do; yes, sir.

**7.** Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. *Brady v. United States*, supra [397 U.S. 742] at 752, 90 S.Ct. 1463 [at 1471] 25 L.Ed.2d 747. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. 397 U.S. at 758, 90 S.Ct. 1463 [at 1474] 25 L.Ed.2d 747. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.

\* \* \* \* \* \*

While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe*, supra [412 U.S. 17] at 31 [93 S.Ct. 1977, at 1985] 36 L.Ed.2d 714. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.
*Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668, 54 L.Ed.2d at 611.

since Ehl had, in effect, rejected the bargain, there was no reason why the State should not be able to indict Ehl on all charges supported by probable cause even though this might induce him *not* to enter a plea of not guilty.

In fact, this Court has recognized precisely this process in *Moore v. Foti,* 546 F.2d 67 (5th Cir. 1977). We stated "an appellant's successful challenge to his plea bargaining sentence is a tacit repudiation of the bargain, allowing the Government to prosecute him on the greater charges." *Moore,* 546 F.2d at 68, *citing Martinez v. Estelle,* 527 F.2d 1330, 1331–32 (5th Cir. 1976); *Arechiga v. Texas,* 469 F.2d 646, 647 (5th Cir. 1972); *Harrington v. U. S.,* 444 F.2d 1190, 1194 (5th Cir. 1971).

■ It is equally clear under *Bordenkircher*—contrary to the District Court's findings [8]—that the chronology of events in which the prosecutor enhanced Ehl's indictments is not decisive. In *Bordenkircher,* the prosecutor did not actually obtain the recidivist indictment until after the plea negotiations had ended. However, his intentions to do so was clearly expressed at the outset, and the accused in that case was fully aware of the terms of the plea offer when he made his decision to plead not guilty. The Court thus reached the conclusion that "[a]s a practical matter, in short, this case would be no different if the grand jury had indicted Hayes [defendant] as a recidivist from the outset and the prosecutor had offered to drop that charge as part of the plea bargain." *Bordenkircher,* 434 U.S. at 361, 98 S.Ct. at 666, 54 L.Ed.2d at 609. Once again, the key to disarming an allegation of vindictiveness is the knowledge and awareness by the accused of the terms of the plea bargain and the price of rejecting the bargain with a plea of not guilty.

Also persuasive is this Court's holding in *Chapman v. Estelle,* 593 F.2d 687 (5th Cir. 1979), where we stated that in those cases that involved belated rejections of a plea bargain, the prosecution's action in securing resentencing on a more serious charge does not appear even "minimally vindictive." *Chapman,* 593 at 690 n.5. And this is especially so where the accused, as in the present case, presents little reason for rejecting the plea bargain or a motion for new trial other than general dissatisfaction with the sentence. *Id.; see* note 1, *supra.*

■ We have not found a case from any jurisdiction that holds that a defendant can accept a plea bargain, take back his part of the bargain, insist upon a trial on the merits, and yet bind the prosecutor, and thus the Court, on the original promised recommendation of punishment after the prosecutor has lost all benefits of the bargain. To permit this situation would undercut the entire purpose and aim of the plea bargaining process. Rather, two results should flow from the accused's rejection. First, the prosecutor under the authority of *Bordenkircher* and *Chapman* should be able to carry through with any expressed promises made if the accused persists in a plea of not guilty. Second, the prosecutor should not be required under the Constitution to proffer again the identical deal, since it would again be rejected by the defendant, who not only now wishes to plead not guilty and contest the charge, but additionally believes that the earlier negotiated punishment was excessive in any event. In short, if the defendant refuses to carry out his part of the bargain, the prosecutor is under no obligation to carry out his part. And there is no appearance of prosecutorial vindictiveness—and, in addition, no necessity for the

---

8. The District Court said:

Prior to trial the prosecutor had the right to present to a grand jury the necessary facts for the return of an indictment with enhancing allegations. If such an indictment had been initially returned and then the aborted plea bargain was made there is little doubt that the state could have prosecuted petitioner as an habitual criminal on the second trial.

However, the prosecutor did not follow that route. He permitted the plea to be entered to the information, without enhancing allegations. The fact that the trial judge set aside the conviction after receipt of petitioner's letter when no formal pleadings to withdraw plea or for new trial were filed is of little moment.

prosecutor to offer any explanation for his actions—where the punishment fixed is the same punishment he had promised to seek throughout plea negotiations in the event that the defendant insisted on his right to plead not guilty and contest guilt.[9]

### III.

In support of his allegations of "judicial vindictiveness", Ehl looks again to the *Pearce* case, which requires:

> Whenever a Judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully approved on appeal.

*Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. Once again, in following this Court's recent pronouncement in *Frank,* we reject the applicability of *Pearce* when a plea bargaining situation is present, and look instead to *Frank* for instruction.

Ehl attempts to convince us that *Frank* can be distinguished because the trial court in *Frank* sentenced the accused only one time—after a disrupted plea bargain rather than after a new trial. In *Frank,* the Judge agreed to a twenty year sentence in return for a guilty plea. Frank rejected the offer, stood trial, was found guilty and received a thirty-three year sentence. *Frank,* at 875. In Ehl's case, the Judge imposed two five-year concurrent terms pursuant to guilty pleas, a waiver of appeal and a dropping of the enhancement charges. Subsequently, Ehl sought and was granted a withdrawal of his guilty plea. This had the effect of repudiating the plea agreement and the necessity of his standing trial on the enhanced indictment.

Ehl argues that the factors creating a "reasonable likelihood of vindictiveness" in *Pearce*—the increased sentence following a new trial—are present in Ehl's case, but lacking in *Frank.* Ehl submits this difference is fundamental and, consequently, *Pearce* should be controlling. We disagree.

■ Both Frank and Ehl ultimately rejected the plea bargains and chose to contest their guilt by standing trial. The fact that they opted to exercise their constitutional rights at different stages of the legal process does not determine the ultimate issue of judicial vindictiveness. The critical factor is, rather, the presence or absence of plea negotiations. *Frank* makes it clear that once there is a bargain—whether it be reduced charges, a recommended sentence, or some other concession—and it is rejected, "the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system." *Frank,* 646 F.2d at 883.

**9.** The State argues alternatively that even if *Pearce* and *Blackledge* and their prodigies (*see* note 4, *supra*) apply, which require that under certain circumstances the State justify a harsher sentence on retrial, the State has adequately met this burden of explaining Ehl's harsher sentence. The State points to the evidentiary hearing in this case, which reflects at least two explanations that were apparently ignored by the District Court. Ehl's sentence resulted from his refusal to enter into a *binding* plea bargain. The prosecutor's intent, as reflected by the record, never changed. He intended to subject Ehl to an habitual criminal penalty if he refused to plea bargain. The prosecutor did not "up the ante" because Ehl decided to withdraw his guilty plea and have a trial. In the second place, the prosecutor continued to bargain even as he tried the case to the jury. He agreed to recommend a ten year sentence when he had an opportunity to seek a longer term. The fact that the prosecutor carried on bargaining at each stage of the process negates Ehl's allegation of vindictiveness. In addition, the evidentiary hearing reflects that Ehl was suspected of breaking into a desk in the sheriff's office to steal money and of breaking jail rules by using a telephone illegally. These incidents reaffirm other evidence of Ehl's continuing bent on criminal conduct to offer another explanation for the prosecutor's action. The District Court failed to consider these factors in concluding that the State had not explained adequately why it imposed a harsher penalty.

The trial judge in the present case cannot be held to have acted vindictively by imposing on Ehl a sentence expressly agreed to by him and the prosecutor after he exercised his unqualified, uncoerced right to stand trial and at a time he did not know whether he would or would not be found guilty.

In addition, the trial judge had the benefit of hearing the trial testimony, was aware of Ehl's prior record, and the sentence was not greater than that prescribed by statute. *Blackmon v. Wainwright*, 608 F.2d 183 (5th Cir. 1979). Finally, since the allegations of judicial vindictiveness are to a great extent dependent upon the assertion of prosecutorial vindictiveness which we have found wanting, this claim also fails.

REVERSED.