UNITED STATES of America,
Plaintiff-Appellant,

v.

Leonor Reyes MAURICIO,
Defendant-Appellee.

No. 81–1564
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1982.

Certiorari Denied Dec. 6, 1982.
See 103 S.Ct. 498.

Do you understand these rights?

Robert J. Erickson, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Jerald L. Abrams, Eagle Pass, Tex., for defendant-appellee.

Before BROWN, GEE and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case affords us the opportunity to reconsider the contours of the defense of vindictive prosecution in light of the Supreme Court's recent decision in *United States v. Goodwin*, —— U.S. ——, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). Concluding that the imposition of felony charges after a defendant chooses to plead not guilty to a misdemeanor does not violate the Constitution, we reverse.

## I.

On May 12, 1981, federal officers near Eagle Pass, Texas apprehended Luis Mauricio and Francisco Reyes, the son and nephew, respectively, of appellee Leonor Mauricio. The two men were transporting eight illegal aliens. Later that day, at the instigation of Immigration Service Officer Ken Harvey, the Government filed two complaints with the United States Magistrate, charging Leonor Mauricio with a total of 4 counts of aiding and abetting an alien to enter the United States illegally, in violation of 8 U.S.C. § 1325. The aliens supplied information and identification to support the complaints.

On May 18, by agreement, officer Harvey and Mauricio's counsel interviewed four of the aliens. Two denied they had seen Mauricio, the other two said nothing.

Given this lack of cooperation, defense counsel proposed a tentative plea agreement, subject to approval by Mauricio and the magistrate, that in exchange for entering a guilty plea to two of the misdemeanor charges, Mauricio would receive a probated sentence with no jail time or fine.

On Friday, May 22, 1981, the parties made another attempt to interview the aliens. Defense counsel, two border patrol agents, and the Mexican vice-consul spoke to the four. The two who previously had remained silent now denied Mauricio's participation in any arrangement, while the third, with the fourth's silent acquiescence, implicated Mauricio.

Defense counsel several times contacted Harvey over the Memorial Day weekend, asking whether the government would dismiss charges in light of the aliens' exculpatory testimony. He reiterated that Mauricio would not plead guilty to the misdemeanor charges.

Harvey replied that he had no authority to dismiss the counts. Only the U. S. Attorney could do so. On Tuesday, May 26, 1981, Harvey contacted the U. S. Attorney's office and relayed the message to defense counsel that they would file a felony charge if Mauricio entered a not guilty plea to the misdemeanors. As one might expect, Mauricio entered her not guilty plea, the U. S. Attorney responded with a felony complaint,[1] and the whole transaction came before the District Court on Mauricio's motion to dismiss for vindictive prosecution. The District Court found that

no direct discussion between an Assistant U. S. Attorney and the defense attorney concerning plea bargaining took place prior to the filing of the felony complaint

---

**1.** The United States states that the U. S. Attorney's Office for the Western District of Texas routinely follows such a plan. Where a defendant refuses to plead guilty to misdemeanor charges pursuant to a plea bargain, the U. S. Attorney files more severe charges.

... discussions between the defense attorney and a Border Patrol investigator did take place but those discussions were not part of formal plea bargaining.

Relying upon *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *U.S. v. Thomas,* 593 F.2d 615, 624 (5th Cir. 1979), *modified on rehearing,* 604 F.2d 450 (5th Cir. 1979), *on appeal after remand,* 617 F.2d 436 (5th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980), and *Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir. 1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978), the District Court held that the U. S. Attorney's actions constituted vindictive prosecution and dismissed. The United States appeals.

We initially stayed our hand pending the Supreme Court's decision in a similar case, *United States v. Goodwin,* 637 F.2d 250 (4th Cir.), *cert. granted,* 454 U.S. 1079, 102 S.Ct. 632, 70 L.Ed.2d 613 (1981). The Supreme Court has now decided *Goodwin,* —— U.S. ——, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), so we proceed to the merits.

## II.

*Perry, supra,* and *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), involved subsequent prosecutions on more severe charges after a defendant attacked his conviction on appeal. The Court found vindictive prosecution. It reasoned that "imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be ... a violation of due process of law." *Pearce,* 395 U.S. at 724, 89 S.Ct. at 2080, 23 L.Ed.2d at 656. Such actions otherwise would "chill"—if not freeze altogether—a defendant's right, preserved by the constitution, to seek a fair trial. *See* Note, *The Guilty Plea as a Waiver of "Present But Unknowable" Constitutional Rights: The Aftermath of the Brady Trilogy,* 74 Colum.L.Rev. 1435 (1974); Note, *Higher Punishment for a Successful Appellant on Retrial: Defining the Gauntlet,* 23 Sw.L.J. 933 (1969); *The Supreme Court, 1968 Term,* 83 Harv.L.Rev. 1, 187 (1969) ("the Supreme Court continued its overhauling of American criminal procedure").

In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court faced for the first time the question of pre-trial vindictive prosecution. It held that a prosecutor did not violate the Due Process Clause of the Fourteenth Amendment by carrying out a threat, made during plea negotiations, to reindict an accused on more serious charges if he did not plea guilty to the offense. Justice White distinguished *Perry* and *Pearce,* commenting,

> In those cases the Court was dealing with the state's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and the defense, which arguably possess relatively equal bargaining power."

434 U.S. at 362, 98 S.Ct. at 667, 54 L.Ed.2d at 610, *quoting Parker v. North Carolina,* 397 U.S. 790, 809, 90 S.Ct. 1458, 1479, 25 L.Ed.2d 785, 799 (1970). Justice White distinguished those situations from the plea bargain, where "there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." "It follows," he concluded,

> that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty.

434 U.S. at 363–64, 98 S.Ct. at 668, 54 L.Ed.2d at 611. *See also Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466, 474 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea"); *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *but cf., U.S. v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (death sentence under Federal Kidnapping Act invalid). *See generally,* Pizzi, *Prosecutorial Discretion, Plea Bargaining*

*and the Supreme Court's Opinion in Bordenkircher v. Hayes*, 6 Hastings Const.L.Q. 269, 291 (1978) ("but perhaps courts should frankly view *Hayes* as an exception to *Perry* because of the strong policies supporting the practice of plea bargaining"); Note, *Bordenkircher v. Hayes: Ignoring Prosecutorial Abuses In Plea Bargaining*, 66 Calif. L.Rev. 875 (1978).

In its most recent pronouncement on this subject, the Supreme Court reversed a Fourth Circuit decision that a presumption of prosecutorial vindictiveness arises when the Government brings more serious charges against a defendant who has invoked his right to jury trial. *Goodwin, supra.* Goodwin had initiated plea negotiations with the prosecutor, a temporary Department of Justice attorney who had no authority to try felony cases, but later advised that he did not wish to plead guilty and desired a jury trial. An Assistant U. S. Attorney then took over the case and, after reviewing it for several weeks, obtained a four-count indictment charging Goodwin with one felony count and three related misdemeanors. The Fourth Circuit found that the prosecutor had not acted with actual vindictiveness but still reversed, holding that the Due Process clause prohibited the Government from bringing more serious charges. Justice Stevens, relying upon *Bordenkircher*, declared,

> After initially expressing an interest in plea negotiation, respondent decided not to plead guilty and requested a trial by jury in District Court. In doing so, he forced the Government to bear the burdens and uncertainty of a trial. This Court in *Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the Government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified.

—— U.S. at ——, 102 S.Ct. at 2493–2494, 73 L.Ed.2d at 86.

This Court also has had occasion to map the vindictive prosecution defense. In *Ehl v. Estelle*, 656 F.2d 166 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1459, 71 L.Ed.2d 669 (1982), the defendant traded two guilty pleas with no appeals and concurrent five year sentences for one unsuccessful appeal, one unsuccessful trial following a plea of not guilty and a consecutive sentence of five and ten years, respectively. "Displeased with this outcome," as we pointed out in a peal of understatement, Ehl filed a federal writ of habeas corpus alleging that the new indictment, which resulted in the increased sentence, constituted prosecutorial vindictiveness. The District Court, upholding Ehl's contentions, granted habeas relief. Relying upon *Bordenkircher, supra,* we reversed. We emphasized that

> the crucial inquiry ... is whether the accused was aware of and knew the price of rejecting the bargain ... the key to disarming an allegation of vindictiveness is the knowledge and awareness by the accused of the terms of the plea bargain and the price of rejecting the bargain with a plea of not guilty.

656 F.2d at 170–71. "The prosecutor," we concluded, "should be able to carry through with any expressed promises made if the accused persists in a plea of not guilty." *Id.* at 171.

A recent case, *U.S. v. Ruppel*, 666 F.2d 261 (5th Cir. 1982), involves facts similar to those before us. Ruppel asserted that after his decision to plead not guilty, the Government infringed his right to jury trial by indicting him for additional crimes. The Court, pondering the course of Supreme Court opinions from *Pearce* to *Bordenkircher*, discerned the following rule:

> The exercise of "some procedural right" by a defendant during his prosecution—such as electing to stand trial before a jury—is by itself insufficient to place on the prosecutor the burden of demonstrating the absence of vindictiveness in his subsequent acts. The due process violation in cases such as *Pearce* and *Blackledge* does not arise from the possibility that a defendant might be deterred from exercising a procedural right. *Bordenkircher v. Hayes....* Rather, it stems from the danger that the Government

might retaliate "against the accused for [some action] lawfully attacking his convictions." *Id.* (*Pearce* and *Blackledge* do not apply when a prosecutor carries out a threat to reindict on more serious charges if the accused does not plead guilty to the offense with which he was originally charged).

666 F.2d at 267 (citations omitted).

*Ruppel* interprets *Bordenkircher* as permitting a prosecutor, after the unsuccessful attempt to negotiate a guilty plea, to charge more severe or numerous offenses. It largely removes the defense of vindictive prosecution in pre-trial skirmishes between defense counsel and prosecution. *See United States v. Chagra*, 669 F.2d 241, 247–48 (5th Cir. 1982).

### III.

At the outset, we face a jurisdictional hurdle. The District Court found that the prosecutor's threat to increase the penalty was not part of the plea bargaining process, reasoning that defense counsel and the Assistant U. S. Attorney never negotiated face-to-face. While we cannot term that finding erroneous, we point out that neither *Bordenkircher* nor our own decisions require that the threat or its fulfillment come as part of "direct plea bargaining". In *Bordenkircher*, the Court underlined the importance of notice, observing, "Hayes was thus fully informed of the true terms of the offer." 434 U.S. at 360, 98 S.Ct. at 666, 54 L.Ed.2d at 609. And in *Ehl*, we explained that "the key" to vindictive prosecution cases is "the knowledge and awareness of the accused", 656 F.2d at 170. We thus need not consider whether, under *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978) (en banc), Mauricio reasonably believed she was negotiating a plea bargain.

It suffices that the prosecutor's decision arose from informal negotiations, through an intermediary, with defense counsel who knew that the U. S. Attorney would file felony charges if Mauricio pleaded not guilty. We find helpful the comments of Professor, now Dean, Vorenberg:

While the doctrine in these cases purports to prohibit retaliatory prosecution generally, it appears to be applied only where prosecutors have retaliated against specially protected actions by defendants, such as the exercise of first amendment rights or the right to appeal a conviction. Allowing the punishment of a defendant to be increased because he wishes to exercise his right to go to trial is considered to be pragmatically justified by the state's interest in efficient administration, notwithstanding the burden placed on the exercise of the sixth amendment right to trial by jury.

Vorenberg, *Decent Restraint of Prosecutorial Power*, 94 Harv.L.Rev. 1521, 1541–42 (1981). *See also* Alschuler, *The Prosecutor's Role in Plea Bargaining*, 36 U.Chi.L.Rev. 50, 85 (1968); Note, *Conditional Guilty Pleas*, 93 Harv.L.Rev. 564, 578 (1980).

The rather odd facts here fall within the realm of *Goodwin, Bordenkircher, Ehl*, and *Ruppel*. Defense counsel never contacted the U. S. Attorney in San Antonio, preferring, apparently, to deal with Officer Harvey. Even after Harvey informed him that he lacked authority to negotiate a plea bargain, counsel did not attempt to reach the Assistant U. S. Attorney but left the job up to Harvey. After unsuccessful efforts over the Memorial Day weekend, Harvey on Tuesday morning reached the U. S. Attorney's Office, which, following its policy of indicting upon felony charges anyone who did not plead guilty to the misdemeanor, declared its intent to charge Mauricio with the felony. He promptly relayed that message to counsel. While counsel may never have "directly" bargained with an Assistant U. S. Attorney, he seemed quite happy to work through Harvey. We conclude that Mauricio, through her attorney, had sufficient "knowledge and awareness", *Ehl, supra*, of the likelihood of felony indictment to dispel any implication of vindictive prosecution.

Since the District Court erred in dismissing the complaint, we REVERSE its judgment with instructions to reinstate the indictment.

SO ORDERED.