Michael WARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 49646.

Court of Criminal Appeals of Texas.

March 12, 1975.

Fred J. Manning, San Antonio, for appellant.

Ted Butler, Dist. Atty., Bill White, Lucien Campbell and Alan E. Battaglia, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of accomplice to robbery by assault. Punishment was assessed by the court at five years.

■ Appellant in his first ground alleges jury misconduct in that the jury during its deliberations discussed and considered the failure of the appellant to testify.

Attached to appellant's amended motion for a new trial is an affidavit of the juror Gilbert Cisneros in which he stated the fact that there was speculation among the members of the jury during their deliberations as to why appellant did not testify. At a hearing, testimony of four of the jurors showed that this fact was briefly mentioned during deliberation, but was suppressed when other jurors including the foreman promptly informed the jurors that they could not discuss or consider the failure of appellant to testify. Thereafter, such discussion stopped, and the jury confined their remarks to a discussion of the evidence.

In Howard v. State, Tex.Cr.App., 484 S.W.2d 903, the Court quoted from Beets v. State, 154 Tex.Cr.R. 275, 226 S.W.2d 853, as follows:

"A bare allusion in the jury room to defendant's failure to testify when immediately suppressed will not of itself cause the judgment of conviction to be set aside," citing many authorities.

We have reviewed the testimony on the hearing of the motion for a new trial, and

conclude that the remarks of the jurors were not of such a nature as to cause reversal. Broussard v. State, Tex.Cr.App., 505 S.W.2d 282; Ratliff v. State, Tex.Cr. App., 490 S.W.2d 844.

The first ground of error is overruled.

■ In his second ground, appellant complains because the court refused to grant his motion to discharge the jury panel after he was exposed to them in handcuffs.

The record fails to reflect that any member of the panel saw the appellant in handcuffs. At a hearing on the motion for new trial, the bailiffs who escorted appellant from the jail to the courtroom through the courthouse corridors were unable to state that any member of the jury panel saw appellant while he was handcuffed. Two members of the panel were placed on the stand by appellant, and neither testified that he or she saw handcuffs. The only witness who testified that appellant was exhibited to jurors while handcuffed was appellant himself, and he was not sure that any member of the panel noticed this. No evidence of injury or prejudice appears in the record. Cline v. State, Tex.Cr.App., 463 S.W.2d 441; Ramirez v. State, Tex.Cr.App., 383 S.W.2d 606. See Ex parte Slaton, Tex.Cr.App., 484 S.W.2d 102.

The second ground of error is overruled.

■ The next complaint, contained in appellant's third ground, is that the court erred in overruling his motion for continuance, filed on the day the case went to trial, in which appellant alleged that his counsel had not had sufficient time to prepare for trial.

The record reflects that appellant's trial counsel was appointed on May 29, 1973. The trial of the case was set for October 1, 1973. Appellant's first motion for continuance alleged insufficient time to prepare for trial, and asked for a November setting. This was granted, and on October 1 the case was reset for November 26. On November 26, when the case was called for trial, appellant filed the instant motion stating only equitable grounds; i. e., that counsel by reason of previous commitments and the press of other business, and the complicated nature of the case, had not had adequate time to prepare for trial. The court did not abuse its discretion in overruling the motion. Hicks v. State, Tex.Cr.App., 508 S.W.2d 400; Hernandez v. State, Tex.Cr.App., 492 S.W.2d 466.

■ The fourth ground of error raises the complaint of double jeopardy.

On a former trial of appellant for the same offense, a motion to quash the indictment had been overruled, and the trial proceeded to a verdict of guilty and assessment of punishment of five years. A motion for new trial was, on first presentation, overruled and sentence was rendered, and notice of appeal given. Thereafter, before any appellate record was filed in this Court, the trial court concluded that the indictment was defective, and granted the motion for a new trial and dismissed the case.

The instant trial was based on a new indictment presented by the grand jury after the above proceedings. On the day this trial started, appellant's Plea of Former Jeopardy was overruled.

The record reflects that the first indictment failed to allege to whom the property that was taken in the alleged robbery belonged. Due to such failure, the indictment was fatally defective, since it did not allege the commission of an offense against the law. Article 27.08, Section 1, Vernon's Ann.C.C.P; Lucero v. State, Tex.Cr.App., 502 S.W.2d 128 (first case). An indictment which does not allege an offense against the law "is utterly insufficient and any conviction based thereon is void." American Plant Food Corporation v. State, 508 S.W.2d 598, at 603, and authorities there cited; Stadley v. State, Tex.Cr.App., 517 S.W.2d 538; Shane v. State, Tex.Cr.App., 513 S.W.2d 579. Since

a conviction in a trial based on a fatally defective indictment is a nullity, the court would have been justified on the motion of either party or on his own motion to declare a mistrial at any stage of the trial, and in such event jeopardy would not attach. Illinois v. Somerville, 93 S.Ct. 1066, 410 U.S. 458, 35 L.Ed.2d 425. Jeopardy did not attach as a result of the first trial on the fatally defective indictment.

Additionally, the record before us does not establish that the order granting the appellant's motion for new trial was not legally entered. The burden was on appellant at the second trial to go forth with evidence in support of his allegation of former jeopardy. Shaffer v. State, Tex. Cr.App., 477 S.W.2d 873. The order granting the appellant's motion for new trial is not in the record; however, the docket sheet reflects that said order was entered while the appellate procedure was still in the trial court and before that court lost jurisdiction. See Reed v. State, Tex. Cr.App., 516 S.W.2d 680; Perkins v. State, Tex.Cr.App., 505 S.W.2d 563. In the absence of a showing to the contrary, we will presume that the court followed the proper procedure set forth in Article 40.09, V.A. C.C.P. and in Robinson v. State, Tex.Cr. App., 505 S.W.2d 298 in granting the motion for new trial. 47 Tex.Jur.2d, p. 153, et seq., Public Officers, § 118. Appellant agreed in his Plea of Former Jeopardy that:

"Counsel for the defendant *presented to the court* a motion for a new trial, alleging again the defect in the indictment as pointed out in the pre-trial motion and *upon hearing* said motion for new trial was granted" (Emphasis added).

Under the circumstances, the trial court had the jurisdiction to grant the motion for a new trial, and dismiss the case.

The court did not err in overruling appellant's plea of former jeopardy. The fourth ground of error is overruled.

Appellant's fifth ground of error reads:

"Trial Court committed reversible error in failing to sustain Defendant's Motion for New Trial and Amended Motion for New Trial, because the State's evidence fail as a matter of law to prove that Michael Ward was an accomplice to the offense of robbery by assault."

Appellant's argument is that the evidence of the accomplice witnesses used by the State was not sufficiently corroborated by other evidence tending to connect appellant with the offense as an accomplice offender.

The indictment charges in substance that on or about July 21, 1972, Daniel Daley, Dudley Sanford and Richard Sanford robbed Ernest Hyman of money, and that on July 20, 1972, appellant Michael Ward advised, commanded and encouraged them to commit said offense, he not being present at its commission.

The accomplice witnesses referred to in appellant's discussion under this ground were the two robbers, Daniel Daley and Dudley Sanford, and Donna Hoberg, girl-friend of Dudley. The court instructed the jury that each of these was an accomplice witness as a matter of law. Appellant also contends, in his sixth ground of error, that State's witness Alan Samford was an accomplice witness as a matter of law, and that the court erred in submitting as a fact issue whether the was an accomplice witness.

The substance of the testimony of Daniel Daley, Dudley Sanford, and Donna Hoberg may be stated as follows:

Alan Samford, his wife Diane, Richard Sanford, Dudley Sanford and his girl-friend Donna Hoberg, lived in the same house. Late in the evening of July 20, 1972, appellant and Bill Turner came to the house and had a long conversation with Richard and Dudley Sanford and Dan Daley. He offered them $1000.00 plus all the money they took in the robbery to steal a

large diamond ring from the Hymans. They agreed to commit the robbery that night (July 20). The two Sanfords and Daley went with appellant and Turner to Hyman's home, and the Sanfords and Daley went to the front door, but left due to a disturbance outside of the house. After another conference with appellant and Turner, it was agreed that they would steal the ring the next day at Hyman's store in the North Star Mall. They met at the Mall the next day, but this plan also failed without any effort being made to accomplish it. The Sanfords and Daley then decided to call it off, but were told by appellant that if the diamond ring was not stolen the person behind the deal "would wipe us out." It was then planned between the two Sanfords, Daley, appellant and Turner for the robbery to be committed by the two Sanfords and Daley that night, July 21, at the Hyman home.

Accordingly, Dudley and Richard Sanford and Dan Daley waited until Ernest Hyman and his wife arrived at their home about 9:30 P.M., and, by threats and use of a pistol, went in the home with them. They tied the Hymans with their hands behind their backs and took two rings, including Mrs. Hyman's engagement ring, some money, and other jewelry. A burglar alarm had been activated, and police officers arrived during the robbery. Richard Sanford was shot and killed while attempting to flee, and the other two robbers were captured.

The testimony of Ernest Hyman and his wife and of the officers sufficiently proved the robbery, in which money and jewelry, including Mrs. Hyman's five carat diamond ring, were taken. The record establishes that appellant was not present during the robbery.

As corroboration of the testimony of the accomplice witnesses the following evidence was given:

Alan Samford testified that on the evening of July 20, the day before the robbery, appellant and Bill Turner came to the house where he lived with Richard and Dudley Sanford and offered him $500.00 if he would help them steal a large diamond ring from the Hymans. Alan went with appellant and Turner to the Hyman residence where, according to the plan, he was to go to the front door, pose as a Western Union messenger, and then force his way in when the knock on the door was answered, and commit the robbery and secure the diamond. He did go to the door, but no one answered. He got "cold feet," decided it was a "senseless thing to do" and went to the car where appellant and Turner were waiting and told them he wanted nothing more to do with their plan. He then separated from them, and did not see or talk with either at any time before the robbery.

After the robbery, Alan talked with appellant and Turner and asked "if they had gotten Chuck (Dudley) and Rick (Richard) to do the robbery, and they said they had talked it over with them, you know, talked to them about it."

Diane Samford, wife of Alan, and sister of the Sanford brothers, testified that she and Alan lived in the same house as Dudley and Richard Sanford and Diane Hoberg. Appellant and Turner came to the house on the evening of July 20 and talked to her husband. Appellant, Turner and Alan left together, and appellant and Turner returned in about an hour and a half. This time these two talked with Dudley and Richard Sanford and Dan Daley, and the latter three left with appellant and Turner and all five returned in about two hours, at which time they had another long conversation. Appellant and Turner left. The next night she heard of the robbery and the death of Richard Sanford on the television. The next day, July 22nd, she had a telephone conversation with appellant, in which the following was said:

"Q   Did you talk with Mike, the defendant, on the telephone there at his mother's house, while you were there?

"A   Yes. I did.

"Q Tell us what the conversation consisted of will you, please?

"A He first asked if Donna Hoberg or I either one had put a contract out on him, because of what had happened the night before, and I told him no, that I hadn't, and that as far as I knew, Donna hadn't. And I asked him if—

"Q. Speak up, young lady.

"A I asked him if—or that is, rather why he had decided to pull the robbery and why he didn't do it, why he and Billy just didn't do it by themselves and he said because of Billy's wife, she had worked for the people before, and that he was known to them, so he had to get somebody else to help him. And he asked my brother, Chuck, if he would do it with him and Chuck had decided that he wanted my younger brother and Daley to do it instead of Mike.

"Q Okay. Now, you are talking about Billy Turner?

"A Yes."

Barbara Gittinger, a beauty shop operator, and Rene Dumas, a clothing salesman, testified that on the afternoon of July 21 they saw appellant, Turner, and Richard Sanford at the North Star Mall, sitting on a bench near the store of prosecuting witness Hyman. According to the accomplice witnesses Daley and Dudley Sanford, this store was to be the site of the second attempt at the robbery planned by them and appellant and Turner.

■ The witness Alan Samford was not an accomplice witness as a matter of law, and the court did not err in refusing to instruct the jury that he was. His evidence reflected that although he had agreed to help appellant in a robbery of the prosecuting witness, he had completely withdrawn from the plan, and had so notified appellant, a full day before the actual robbery by others, and was not an accesso-

ry or accomplice to the conspiracy to commit the robbery on July 21. See Singletary v. State, Tex.Cr.App., 509 S.W.2d 572 at 575; Morgan v. State, 171 Tex.Cr.R. 187, 346 S.W.2d 116. He was not a party to the agreement between appellant and the three men who actually committed the robbery on the night of July 21. The fact that he might have had some information of appellant's intentions and failed to disclose that fact does not constitute him an accomplice witness. Williams v. State, 464 S.W.2d 842; Dillard v. State, Tex.Cr.App., 479 S.W.2d 304.

This Court has consistently held that where there is doubt as to whether a witness is an accomplice witness and such fact is submitted to the jury, such procedure is sufficient even though the evidence seems to preponderate in favor of the fact that such witness is an accomplice witness as a matter of law. Zitterich v. State, Tex.Cr. App., 502 S.W.2d 144; Allen v. State, Tex.Cr.App., 461 S.W.2d 622; Lopez v. State, 92 Tex.Cr.R. 97, 242 S.W. 212. The trial court in the instant case, out of an abundance of caution, submitted the issue as a fact question. No error is presented.

The testimony of Alan Samford and Diane Samford concerning their conversations with appellant both before and after the robbery, together with the other evidence in the record, amply corroborates the testimony of the accomplice witnesses. See Chambers v. State, Tex.Cr.App., 508 S.W.2d 348; Deal v. State, Tex.Cr.App., 508 S.W.2d 355. The evidence is sufficient to support the verdict and the judgment.

The fifth and sixth grounds of error are overruled.

Appellant's seventh ground is that the court committed error in failing to instruct the jury on the issue of appellant's abandonment of the original plan or scheme.

Appellant was charged and convicted of being an accomplice to the robbery of Ernest Hyman, which robbery was to be com-

mitted and was committed by Dudley and Richard Sanford and Dan Daley.

There is no evidence in the record that appellant ever considered abandoning the scheme to rob Hyman. In fact, the evidence is to the contrary, as demonstrated by the summary heretofore given. The contention of appellant is without merit. Randolph v. State, Tex.Cr.App., 493 S.W.2d 869. The ground of error is overruled.

We have considered the instrument styled Pro Se Brief of Michael F. Ward, and find no merit in the contentions made therein.

The judgment is affirmed.

Opinion approved by the Court.