**Charles Alvin PALM, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 67133.

Court of Criminal Appeals of Texas, Panel No. 3.

Oct. 7, 1981.

Rehearing Denied Sept. 28, 1983.

Don R. Cantrell, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., James C. Brough, and Ted Poe, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before TOM G. DAVIS, McCORMICK and TEAGUE, JJ.

## OPINION

McCORMICK, Judge.

Appellant pled guilty in Harris County on November 14, 1979, to a charge of aggravated robbery. The trial court found appellant guilty and assessed punishment at twelve years in the Texas Department of Corrections.

The record reflects that on September 21, 1979, appellant had apparently pled guilty in cause number 302,991 to an aggravated robbery charge and pursuant to a plea bargain had been sentenced to ten years in the Texas Department of Corrections. It was later discovered that at the time of the entry of the September 21, 1979 plea there had been no valid charging instrument against appellant. He had not been indicted nor had he waived indictment nor had an information been filed. On October 1, 1979, appellant filed a motion for new trial which was granted by the trial court.

Appellant was thereafter indicted on October 16, 1979, for the aggravated robbery that had been the basis of the September 21 proceeding. This new indictment was cause number 304,319. On November 14, 1979, appellant was back in court for trial on the aggravated robbery indictment, cause number 304,319. The State again offered appellant the ten-year plea bargain. Appellant declined to accept the plea offer and pled guilty before the court. The State made no punishment recommendation. Introduced into evidence at this trial was evidence that appellant had a 1973 conviction for posses-

sion of marihuana. This was apparently not before the trial court at the initial plea proceedings in September. The State asked the court to consider the evidence before it that it had not previously considered. The trial court assessed punishment at twelve years' confinement.

■ Appellant initially complains that the guilty plea proceeding on November 14, 1979, placed him in double jeopardy. The jurisdiction of the trial court had not been invoked during the September 21, 1979 proceedings. If the jurisdiction of the trial court is never invoked, any conviction that may result is void. *American Plant Food v. State,* 508 S.W.2d 598 (Tex.Cr.App.1974). Jeopardy will generally not attach if the trial court never had jurisdiction of the case. *Ward v. State,* 520 S.W.2d 395 (Tex. Cr.App.1975). See also, *Ball v. United States,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). Further, by making a motion for new trial, appellant was precluded from raising his double jeopardy argument. See, *Martin v. Spradley,* 341 F.2d 89 (5th Cir. 1965); *Jones v. State,* 465 S.W.2d 768 (Tex. Cr.App.1971).

Next, appellant complains that the trial court lacked authority to grant a new trial on its own motion and cites the cases of *Ramirez v. State,* 587 S.W.2d 144 (Tex.Cr. App.1979), and *Zaragosa v. State,* 588 S.W.2d 322 (Tex.Cr.App.1979).

The record, however, reflects a motion for new trial was filed by appellant on October 1, 1979, and that it was granted on that date. Therefore, neither case cited by appellant is relevant.

Appellant next complains that the aggravated robbery indictment failed to allege an offense because it failed to specifically list what type of property had been taken. The indictment, in pertinent part, read:

"Charles Alvin Palm * * * did while in the course of committing theft of property owned by . . . . "

This same contention was rejected in *Hill v. State,* 568 S.W.2d 338 (Tex.Cr.App.1978).

Appellant next accuses the prosecutor of prosecutorial vindictiveness. This conten-

tion is without merit. The record shows that the State re-offered appellant his original bargain. He, not the State, rejected the re-offered plea bargain. *Lyles v. State,* 582 S.W.2d 138 (Tex.Cr.App.1979).

■ Finally, appellant complains that the trial court impermissibly increased the punishment after the finding of guilt on November 14, 1979, thereby violating appellant's due process rights.

The State argues that on November 14 the trial court had before it information it did not possess on September 21, 1979, specifically the 1973 marihuana conviction, and, therefore, could increase punishment.

In *Ex parte Bowman,* 523 S.W.2d 677 (Tex.Cr.App.1975), this Court dealt with a similar argument as now advanced by the State. In that case it was held that in order permissibly to increase punishment, the reason for the increase in the punishment set by the trial court must have occurred after the date of the original sentence. *The United States Supreme Court in North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), said:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he received after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. *Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.* And the factual data upon which the increased sentence is based must be

made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (Emphasis added). 395 U.S. at 725, 726, 89 S.Ct. at 2080, 2081.

If the marihuana conviction had occurred after September 21, 1979, the increase in the sentence would have been permissible. Since it was a 1973 conviction, the trial court could not use that as a basis for increasing punishment. Nothing in the record appears to have occurred after the original sentence that would justify an increased punishment.

The cause is remanded for the trial court to assess punishment in accordance with *North Carolina v. Pearce,* supra. See, *Ex parte Bowman,* supra.

TEAGUE, J., not participating.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission, a panel of the Court remanded this cause to the trial court for a reassessment of punishment in accordance with *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The panel indicated that appellant had filed a motion for new trial attacking his ten year sentence, assessed pursuant to a plea bargain, then later declined the State's offer to again recommend a ten year punishment. The panel granted appellant relief from a twelve year sentence assessed by the trial court without a recommendation from the State, because the increased punishment was clearly due to a misdemeanor conviction extant at the time of the original sentencing.

1. Hereinafter cited as *Ehl.*

    Presiding Judge Onion and Judge Odom, respectively, have a dissenting opinion. Since the former overlaps the latter, when we mention hereinafter the "dissent" or "dissenting opinion" the reference is to the dissenting opinion of our Presiding Judge.

2. That since due process of law prohibits vindictiveness against a defendant who has suc-

In a stout motion for rehearing, the State Prosecuting Attorney urges our application of *Ehl v. Estelle,* 656 F.2d 166 (CA5 1981)[1] to the facts of this case; that motion has occasioned our careful review and reconsideration of the facts reflected by the record before us.

We first observe that the essence of *Ehl* is embodied in Texas law already. See *Bouie v. State,* 565 S.W.2d 543 (Tex.Cr.App. 1978); and *Alvarez v. State,* 536 S.W.2d 357 (Tex.Cr.App.1976). Indeed the logic of *Ehl's* exegesis can hardly be assailed with feeling, *viz:* the rationale of *North Carolina v. Pearce,* supra,[2] and its progeny does not apply where the defendant—aware of the price of rejecting a plea offer—nevertheless subsequently withdraws his entered guilty plea or otherwise attacks the sentence after conviction; restated, a belated repudiation of a plea bargain places a defendant in the same posture as one who refuses to carry out his part of the bargain pretrial and serves to release the prosecutor from the obligation to carry out his part as well.

But the record in the instant case does not establish appellant repudiated the plea bargain; on the contrary it affirmatively indicates that appellant *did* in all respects carry out his part of the bargain, but was thereafter swept up in a whirlwind of the prosecutor's oversight, machinations, amendment of conditions, and ultimate frustration erupted into anger. In sum, there are several reasons why *Ehl* does not apply to the case before us.

*Appellant Did Not Attack His Conviction*

Appellant was arrested the day after he committed an aggravated robbery, and he readily confessed to the crime. The next day, a charging complaint issued bearing

cessfully attacked a conviction, the reasons for a more severe sentence upon retrial must be based upon objective information about identifiable conduct on the part of the defendant occurring after the original sentencing, and must be spread affirmatively upon the record so that the constitutional legitimacy of the increased sentence may be fully reviewed by a higher court.

Cause No. 302,911. The following day, counsel was appointed and the parties appeared for trial.[3] There is no indication from the record that appellant agreed to, or was asked to waive indictment. The transcription of the hearing reflects appellant was admonished as to the range of punishment, though he was not advised that the court was not bound to follow the prosecutor's recommendation. In discussing the plea bargaining agreement with appellant, the court inquired,

"Do you personally agree to that plea bargaining agreement being aware that *you have no right of appeal* if I follow that... agreement?"[4]

Appellant did agree.

He then entered his plea of guilty, and the prosecutor offered his judicial confession, agreement to stipulate and waiver of constitutional rights.[5] This document states in part: "I intend to enter a plea of guilty and the prosecutor will recommend that my punishment should be set at ten (10) years [confinement], and I agree to that recommendation." The court assessed the punishment at ten years. The trial court then said,

"You may have ten days in which *to file a Motion for New Trial* or a motion in Arrest of Judgment, *or you may waive that time* and be sentenced now. What is your desire in that matter?

[DEFENSE COUNSEL]: He wishes to be sentenced today.

＊　　＊　　＊　　＊　　＊　　＊

THE COURT: * * * Mr. Palm, you don't want your ten days?
MR. PALM: *No.*"

The court thereupon pronounced the sentence at not less than five nor more than ten years confinement, with sentence to begin September 18, 1979, the date of the offense.

Three days after the plea, the district clerk issued an order to the Harris County Sheriff to deliver appellant to the Department of Corrections "after the tenth (10th) day following the date of sentencing."[6]

The record does not reflect when, but clearly it was sometime between the date of the district clerk's order (September 24), and October 1, the deputy district clerk assigned to the convicting court "discovered,"

"I could not complete my paper work[7] because I could not find a waiver of indictment executed in the Court trial. *I asked for the defendant to reappear* in Court and possibly retaking the plea *or something of that nature.* * * * I issued a bench warrant."

The record next reflects a truly inscrutable preprinted form "Motion for New Trial" ostensibly filed on behalf of appellant on October 1, 1979.[8] The ground alleged to justify a new trial is that "the judgment... is contrary to the law and evidence in said cause." There is no indication from either the instruments contained in the record, or the testimony, that appellant was present at any hearing on this motion for new trial, or, for that matter, that appellant was even aware of its existence.

---

3. The State Prosecuting Attorney is incorrect in asserting the record does not contain the transcription of this September 21 plea hearing on appellant's plea of guilty. Thus, contrary to his position, this Court need not resort to any presumption of regularity regarding those proceedings.

4. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

5. See Article 1.15, V.A.C.C.P.

6. The order recites that in Cause No. 302,911 appellant "[has] been TRIED, CONVICTED, and SENTENCED to the Texas Department of Corrections..."

7. Apparently, by "paper work," the deputy clerk meant the judgment and sentence; we say this because neither is contained in the record; the clerk's "entire file" is certified as being before us.

8. It is impossible to discern who signed this document, thus, it is less clear than intimated by the panel that "*appellant* filed a motion for new trial....," and while in the average case, this would be safe to assume, it is a material issue under pronouncements of *Ehl*, on which the State has the burden of proof.

Another form document dated the same day and executed by a deputy district clerk, recites: "By Order of the Court on the 1 day of October, A.D. 1979 the following action is directed in the above styled and numbered cause:;" an "X" appears in a square by which it is printed "Motion for new trial granted."

So, this latter document, which we liberally construe to be an order of the trial court, indicates that on the same day this *late* motion[9] was filed by someone, the trial court granted it.[10]

Strangely enough, on the next day, October 2, the Sheriff of Harris County delivered appellant to the Department of Corrections.

Nine days after he had arrived at the Department of Corrections (October 10), a bench warrant was issued for the apparently unwitting appellant, stating that Cause No. 302,911 was "set on the docket for the 16th day of October, 1979." On October 16, appellant was again present in Harris County.

*Appellant's Uncounseled Refusal to Sign a Waiver of Indictment Did Not Constitute a Repudiation of the Original Bargain*

Though the record does not reflect the date appellant actually arrived back in Harris County, the only inference the record supports is that it was his refusal—without counsel—to sign a waiver of indictment for the district clerk which caused the *prosecutor* to withdraw his offer on October 16: the record contains an instrument appointing new counsel on that date; at the bottom of this instrument appears a handwritten notation:

"All recommendations by the State are off."[11]

On the same day, appellant was indicted in Cause No. 304,316, for the identical conduct alleged against him in the complaint previously filed in Cause No. 302,911.

*Appellant Did Not Insist on a Trial on the Merits*

Approximately one month later, on November 14, Cause No. 304,319 was called for trial. Appointed counsel insisted that a plea of former jeopardy be considered before anything else, and upon arraignment, when appellant replied, "not guilty," counsel asked that "a 'special plea' be entered;" the court's docket sheet reflects appellant entered "a plea of not guilty due to double jeopardy."

Counsel adduced testimony of the deputy district clerk regarding his "discovery" of the prior defective proceeding. On crossexamination, the prosecutor elicited the following:

"Q: It is your understanding that the defendant *was brought back* from the penitentiary *and confronted* with a *possibility* of doing the plea over again since

---

9. This motion was ten days late; as the transcription of the plea hearing demonstrates, appellant had waived his right to file such a motion and sentence had already been pronounced.

10. The dissent observes that the trial court could have, and "apparently ... did," set appellant's conviction aside on its own motion; inexplicably, the dissent then proceeds to apply to this case a legal rationale which denies relief to one because he has "successfully attacked his conviction."

Contrary to the dissents' suggestion that we "give no consideration to the fact that the court had no jurisdiction over the original proceedings," we consider this fact heavily: the necessity of relitigating the cause was not due to any failure or affirmative effort on the part of this

appellant; he did not "attack his conviction" successfully or otherwise.

11. This notation like another document contained in the record is "signed" by the prosecutor with a depiction of an Indian tepee. Apparently a clever cryptogram for Ted Poe's initials, the "tepee" found under the instruction supports the conclusion that the State sought appellant's cooperation in some way to obviate a new trial proceeding (and perforce, the appointment of counsel). When appellant refused to so cooperate, starting the process over was imminent, so simultaneous with the appointment of counsel, "all recommendations by the State [were] off." See *post* at 435 and n. 16.

this Court had absolutely no jurisdiction to take the plea of guilty? [12]

A: Yes, sir.

Q: And that *he refused to waive indictment in that case.*

A: Yes, sir he did.

Q: *And that is why we are here today, is that correct?*

A: *Yes, sir.*

Q: *Have you [district clerk]* ever personally asked him this regarding the waiver of indictment or not?

A: Yes, sir, *I have on numerous occasions.*

Q: And he has *made it clear to you that he does not want to waive indictment* in Cause No. 302,911.

A: Yes, sir."

Defense counsel also placed appellant on the stand. Appellant testified to having been through the September 21 plea hearing, and to having done everything he had agreed to do under the plea bargaining agreement, including waiving ten days for sentencing and waiving his right to appeal. He also testified he had served nine days in the Department of Corrections pursuant to the ten year sentence. On cross, the prosecutor elicited appellant's agreement that he had judicially confessed to the aggravated robbery on September 21, and that confession was true. Appellant agreed with the prosecutor that he had never waived indictment, nor been indicted in Cause No. 302,-991. Appellant stated it was his understanding that he was returned from the penitentiary to Harris County "to sign a

waiver." He also agreed that, in the words of the prosecutor, he had refused to "replead the case *with this Court having jurisdiction* for the same 10 years...." [13] He acknowledged he had been indicted for the same conduct under a new cause number. The prosecutor inquired:

"Q: And it is your position that you want *to go to trial* in Cause No. 304,319 and that *you do not want to plead guilty,* is that right?

A: *A plea of double jeopardy.*"

The prosecutor finally asked appellant if he were aware that Cause No. 302,991 was no longer pending against him, that it had been dismissed. Appellant said he was not aware of such an action.

Finally, the transcription of court reporter's notes of the events of November 14, 1979, reflects the trial conducted on the merits in Cause No. 304,319: appellant entered a *plea of guilty.*

### No Showing Appellant Understood the Consequences

A very routine plea hearing is reflected—at least until the prosecutor requested permission to question appellant. The prosecutor's focus was upon the aggravated facts of the offense, and a prior misdemeanor conviction for possession of marihuana, which the prosecutor repeatedly emphasized appellant had "never mentioned... in front of the Judge in September...." [14] In conclusion the prosecutor argued,

---

12. The "possibility" of doing something *other than* "doing the plea over again" pops up repeatedly throughout this record; [see, e.g., testimony of deputy district clerk, *ante* at 433]; yet the record is notably vague about the alternative course the State had in mind to correct the defect in—if not the proceeding itself—the records of the cause. But see n. 13, *post.*

13. The clear inference from the above testimony of the deputy district clerk and appellant when viewed as a whole is that the "alternative" to "doing the plea over" envisioned by the State, was to merely have appellant execute a waiver of indictment at the request of the district clerk, and back date it to September 21, the date the original plea was entered. Under this plan, appellant would not need counsel and

no new plea proceeding would be necessary. See also n. 16, *post.*

The dissent, however, apparently reads the prosecutor's last question and appellant's affirmative reply out of context to "show[ ] that *after indictment* the State again offered the appellant the same ten year plea bargain if he entered a guilty plea, and that this was rejected by the appellant." But there is no evidence in the entire record to support such a reading; indeed, if the record contained such evidence, the Court would not be so sharply divided in this case.

14. This prosecutor had negotiated the original plea with appellant and his counsel taken on September 21. In the record before us is a prerelease interview report dated September 20

"I would ask the Court just to consider the evidence that the Court did not previously have access to in September. Thank you."

And consider it the trial court did,—immediately assessing appellant's punishment at twelve years.

Even if the record demonstrated appellant withdrew his plea, attacked his conviction, insisted upon a trial or otherwise repudiated the original plea bargain, there is no evidence whatever responsive to the "crucial inquiry" cited by *Ehl* as the "key to disarming an allegation of vindictiveness," of "whether the accused was aware of and knew the price of rejecting the bargain,"[15] quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1968).

*In Conclusion*

Faced with this record, we are bewildered by the assertion of the State Prosecuting Attorney that "the new trial was occasioned by appellant's withdrawal from a negotiated guilty plea." Yet it is not surprising that he nowhere points to specific conduct on the part of this appellant which constitutes the alleged "withdrawal from a negotiated guilty plea."[16]

which reflects under "prior convictions" that in 1973 appellant was charged with two counts of "P/M"—obviously, possession of marihuana.

We presume therefore that the prosecutor knew about and evaluated this prior misdemeanor conviction in coming to terms of his plea offer. In view of this, his attempt to fault appellant for not speaking up about this matter in the original hearing—and particularly when he was not asked—strikes us as the highest form of hindsight—if not vindictiveness.

**15.** As was noted previously, appellant committed, was arrested for, confessed and pleaded guilty to, an aggravated robbery, all in the course of three days. No doubt his eagerness to "make a deal" did not occasion a discussion regarding the "price of rejecting the bargain."

The dissent seems to assign significance to the fact "that at the time of the original plea bargain appellant and his counsel were aware of the 1973 conviction for possession of marihuana;" while we have no doubt appellant was aware of his own prior record, we do not see the relevance of the fact to our inquiry.

Quoting *Frank v. Blackburn,* 646 F.2d 873 (CA5 1980), the State Prosecuting Attorney observes the constituents of a plea bargain:

"Plea bargaining is a process of negotiation in which the prosecutor, trial judge or some other official in the criminal justice system offers the defendant certain concessions *IN EXCHANGE FOR AN ADMISSION OF GUILT.* The concessions offered may relate to the offense charged, the sentence to be imposed, *or a variety of other circumstances. The benefit offered by the defendant, however, is always the same: ENTRY OF A PLEA OF GUILTY."* [Footnotes deleted]

As far as this record shows, appellant did admit his guilt in open court and did enter a plea of guilty on both September 21, and November 14, 1979. He furthermore complied with every term of the original plea bargaining agreement reflected either in the papers filed or in oral recitations made during the hearing of Cause No. 302,991. The record is devoid of evidence that appellant agreed to waive indictment or the assistance of counsel in that cause. And though a late motion for new trial was filed, there is no evidence it was made with appellant's consent or knowledge; indeed *appellant's* intent may be gleaned from his personal waiver of all post conviction reme-

**16.** It seems implicit in this that the State Prosecuting Attorney concedes that appellant was returned to Harris County solely for the purpose of executing a "nunc pro tunc" waiver of indictment so that the district clerk might "complete [his] paper work" and thereby "cover" the prosecutor's oversight. A blank waiver of indictment form, dated September 21 (which, unlike all other papers in the file of Cause No. 302,911, bears no September 21 file mark of the clerk) supports this conclusion.

It is certainly manifest that the State's asserted offer to appellant was open only during the time before counsel was appointed to represent him, since "all recommendations by the State [were] off" simultaneous with that appointment. See n. 11, *ante,* and accompanying text.

Further, it is clear that no new indictment was extant on which plea bargaining could begin anew when appellant arrived back in Harris County; that was not sought until appellant "refused to waive indictment in [the original] cause [on numerous occasions]." See testimony of deputy district clerk *ante,* at 434–435.

dies, including appeal.[17] Stranger still is the fact that appellant was transferred to the Department of Corrections one day after the motion for new trial was filed and *granted*[18]—under what judgment and sentence extant one wonders.

There is no evidence that appellant originally either agreed to waive indictment, counsel or any claim of double jeopardy which might arise as a result of the State's negligence[19]—yet clear as day, it was his refusal to do one or all of these things, to cooperate in getting the State's house in order, which resulted in the trial court's assessment of twelve years in Cause No. 304,319, at the urging of the prosecutor. At the very least, it is a duty of the *prosecutor* to insure the jurisdiction of the district court is somehow invoked when implementing a plea bargain so as to avoid repeated proceedings. But failing that, his insistence that the appellant take steps to correct his error constitutes an amendment to the original terms of the bargain.

■ We hold the State has failed to establish appellant rejected the original plea offer, because the record indicates the prosecutor amended the terms thereof and consequently, did not offer appellant the same deal.

This case does not even slightly resemble *Ehl*.[20] It seems the only omission by the panel on original submission was a failure to develop the factual sequence in sufficient

detail so as to demonstrate with clarity its eminently correct conclusion: Since the record does not establish that appellant: (1) successfully attacked his conviction; (2) rejected an offer by the State for the same terms and conditions as the original bargain; or (3) was aware of the price of rejecting the original offer, we have no choice but to remand the cause for reassessment of punishment in accord with *North Carolina v. Pearce*, supra.

The State's motion for rehearing is overruled.

ONION, Presiding Judge, dissenting.

We granted the motion for leave to file a motion for rehearing to consider the State's vigorously urged contention the panel opinion was in error in remanding this cause to the trial court to re-assess punishment in accordance with said opinion and *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its progeny.

It appears that a felony complaint charging the appellant with aggravated robbery was originally filed in the district court invoking the trial judge's authority as a magistrate. See Article 2.09, V.A.C.C.P. See also *Ex parte Clear*, 573 S.W.2d 224 (Tex.Cr.App.1978). The trial court cause number was 302,991. On September 21, 1979, the appellant entered a plea of guilty before the court to said charge, waiving a jury trial, and pursuant to a plea bargain

---

**17.** Surely if the decision to appeal is personal to the criminal convict, so too is the decision to move for a new trial.

**18.** The record all but shouts the obvious: The motion for new trial was filed at the instance of the prosecutor because of problems with completion of the "paper work," clearly due to a failure of the State. It is poignant that—unlike the State Prosecuting Attorney—the Harris County District Attorney's Office has never argued the filing of this motion for new trial or any other event reflected, constituted *appellant's* repudiation of the bargain.

**19.** Though far from clear, one thrust of the dissenting opinion seems to be that after the conviction was discovered to be void, appellant's assertion of a Fifth Amendment claim justified an increased punishment. Obviously,

such a position cannot be squared with *North Carolina v. Pearce*, supra.

**20.** The dissent charges that we are "overly obsessed in pointing out all examples of ineptness, both real and imagined, occurring in the court below." But our effort to determine what happened in this case from a less than model record has been made by scrutinizing each and every document, entry, notation and page contained in the entire record before us; in putting each piece together, an integrated whole has emerged with clarity. If we are to be faulted for drawing our conclusions from all the facts and circumstances shown, then so be it. But even the highest degree of selective consideration of isolated facts out of context contained in this record will not support the result urged by the State Prosecuting Attorney—as the dissenting opinion well illustrates.

with the State, his punishment was assessed by the court at ten (10) years' confinement in the Department of Corrections.

Shortly thereafter, it was discovered that the appellant had never been indicted for said offense, had not waived the presentment of an indictment, and no felony information had been filed. See Article 1.141, V.A.C.C.P. At the time of appellant's plea of guilty in Cause No. 302,991, there was no valid State's pleadings invoking the district court's jurisdiction. The proceedings were a nullity. The appellant was bench warranted from the Department of Corrections to Harris County. As the original panel opinion indicated, the appellant's motion for a new trial was granted. The trial court had no jurisdiction at the time of the first "conviction" for the offense involved. *Ward v. State,* 520 S.W.2d 395 (Tex.Cr.App. 1975). The proceedings were a nullity and the court could have set aside the conviction on its own motion, which is apparently what it did. There is no need to question the validity of the order granting a new trial.

On October 16, 1979, the appellant was indicted in Cause No. 304,319 for the same offense of aggravated robbery. On November 14, 1979, the court heard evidence and overruled appellant's motion to dismiss the indictment on the basis of double jeopardy. The appellant testified at such hearing and acknowledged that he had been offered by the State the same ten-year plea bargain as before, but that he had rejected the same. The double jeopardy motion was overruled. Appellant then entered a guilty plea before the court waiving trial by jury. Introduced into evidence was appellant's 1973 conviction for possession of marihuana. This apparently was not before the court at the initial proceedings in September. The State made no recommendation as to punishment, but did ask the court to consider the evidence before it that had not been previously considered. The court assessed punishment at twelve (12) years' imprisonment.

On original submission to the panel, this cause was remanded to the trial court to re-assess punishment in accordance with *North Carolina v. Pearce,* supra, since the 1973 marihuana conviction was not shown to be "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 725, 726, 89 S.Ct. at 2080, 2081.

The United States Supreme Court held in *North Carolina v. Pearce,* supra, that the Due Process Clause of the Fourteenth Amendment requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. The same principle was later applied to prohibit a prosecutor from reindicting a convicted misdemeanant on a felony charge after the defendant had invoked an appellate remedy, since in this situation there was also a realistic likelihood of vindictiveness. *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

In *Pearce* the court wrote:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased

sentence may be fully reviewed on appeal."

*Pearce* made clear, however, that absent vindictiveness or the possibility of vindictiveness more severe sentences imposed following reconviction are constitutionally valid. See also *Chaffin v. Stynchcombe,* 412 U.S. 17, 29, 93 S.Ct. 1977, 1984, 36 L.Ed.2d 714 (1973); *Michigan v. Payne,* 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973); *Colten v. Kentucky,* 407 U.S. 104, 116, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972); *United States v. Floyd,* 519 F.2d 1031, 1033 (5th Cir.1975).

The State urges that *Pearce* and *Blackledge* are not applicable to the facts of this case and cite *Ehl v. Estelle,* 656 F.2d 166 (5th Cir.1981), in support thereof.

In *Ehl v. Estelle,* supra, the court held that there was no judicial or prosecutorial vindictiveness where although the punishment imposed on conviction following discretionary withdrawal of guilty plea was greater than that imposed pursuant to guilty plea defendant was aware of price of rejecting the bargain in that possibility of a greater punishment due to likely enhanced charges, which were withdrawn as part of plea agreement, was communicated to the defendant and his attorney in the initial bargaining stages.

Ehl was indicted for passing a forged instrument. While awaiting trial on this charge, Ehl was charged with the felony offense of escape from jail. As a result of prior felony convictions, Ehl faced the possibility of enhanced punishment as a habitual offender. In exchange for the prosecutor's agreement not to seek the habitual offender status, Ehl agreed to plead guilty to both the "passing" and escape charges. Pursuant to the plea bargain, Ehl received two five-year concurrent sentences.

While awaiting transfer to the Texas Department of Corrections, Ehl wrote the trial judge that he had been offered lesser punishment on the "passing" charge before the escape occurred, his guilty pleas had been coerced because of threat of enhanced punishment by the prosecutor and that he had a defense to the escape charge. After an evidentiary hearing, the court allowed Ehl to withdraw his guilty plea on the escape charge and to appeal his "passing" conviction, which was later affirmed by this court. *Ehl v. State,* 557 S.W.2d 123 (Tex.Cr.App. 1977) (Table) (unpublished opinion).

After being permitted to withdraw his guilty plea to the escape charge, Ehl was indicted for the escape offense as the primary offense with two prior felony convictions alleged for enhancement of punishment.

At the bifurcated trial while the jury was deliberating on issue of guilt of the escape charge, a second plea agreement was reached. If the jury found Ehl guilty of escape the enhancement paragraphs of the indictment would have been abandoned and the State would recommend ten years' imprisonment to commence when Ehl completed his time on the "passing" conviction. The jury found Ehl guilty of escape and the plea bargain as to punishment was carried out.

Displeased with the outcome, Ehl exhausted state habeas corpus remedies, and proceeded to federal district court where he obtained relief with the court relying upon *North Carolina v. Pearce,* supra, and *Blackledge v. Perry,* supra.

On appeal the Fifth Circuit Court of Appeals in reversing the district court wrote:[1]

"Ehl's reliance on *Pearce* and *Blackledge* and their progeny is misplaced. Those cases involved a situation where there had been an appeal of a contested trial, unlike the present situation in which Ehl has not claimed any error by the trial court in the original guilty plea hearing. Furthermore, this Court, sitting en banc in *Frank v. Blackburn,* 646 F.2d 873 (5th Cir.1980) has cast doubt on the applicability of *Pearce* in plea bargaining situations. 'We find the rule of *North Carolina v. Pearce* to be completely inapplicable to post-plea bargaining sentencing proceedings. Accord, *Martin v. Blackburn,* 606 F.2d 92, 93 (5th Cir.1979),

1. The footnotes of the *Ehl* opinion are omitted.

cert. denied, 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980) ("it is highly questionable whether *Pearce* applies to plea bargaining situations")', *Frank,* 646 F.2d at 883. The En Banc Court reasoned that if 'a defendant can successfully demand the same leniency in exchange for a guilty plea, all the incentives to plea bargaining disappear; the defendant has nothing to lose by going to trial.' Id.

"In light of this pronouncement in *Frank* and the facts of the present case, we find *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) more analogous than either *Pearce* or *Blackledge.* In *Bordenkircher* the prosecutor offered to recommend a five year prison sentence if the defendant would plead guilty to a forgery indictment. The prosecutor further made it clear that he would reindict the accused under the State's habitual offender act if he chose to plead not guilty. *Bordenkircher,* 434 U.S. at 358, 98 S.Ct. at 665, 54 L.Ed. at 607. The defendant in that case chose to stand trial and the prosecution carried out its expressed purpose. The Supreme Court concluded that there was no due process violation when the prosecutor carried through with promised terms which the accused was aware of during plea negotiations, but which he ultimately chose to reject. In explaining the rationale for its holding, the Court distinguished *Pearce* and *Blackledge,* stating:

> In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power." *Parker v. North Carolina,* 397 U.S. 790, 809, 90 S.Ct. 1458 [1479–80], 25 L.Ed.2d 785 (opinion of Brennan, J.).

> \*   \*   \*   \*   \*   \*

But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.
*Bordenkircher,* 434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610–11.

"A crucial inquiry that we glean from *Bordenkircher,* therefore, is whether the accused was aware of and knew the price of rejecting the bargain. We find the record before us clear on this point. As reflected at the evidentiary hearing the possibility of a lengthier sentence due to likely enhanced charges was communicated to Ehl and his attorney in the initial plea bargaining stages.

"Further, as *Bordenkircher* stresses, a prosecutor has a good deal of leeway to induce defendants to forego their rights to plead not guilty. The State's interest in inducing Ehl to plead guilty, subsequent to the Court's allowing him to stand trial after he effectively withdrew his guilty plea, was identical to its interest prior to his aborted guilty pleas. At this stage of the process, since Ehl had, in effect, rejected the bargain, there was no reason why the State should not be able to indict Ehl on all charges supported by probable cause even though this might induce him *not* to enter a plea of not guilty.

"In fact, this Court has recognized precisely this process in *Moore v. Foti,* 546 F.2d 67 (5th Cir.1977). We stated 'an appellant's successful challenge to his plea bargaining sentence is a tacit repudiation of the bargain, allowing the Government to prosecute him on the greater charges.' *Moore,* 546 F.2d at 68, citing *Martinez v. Estelle,* 527 F.2d 1330, 1331–32 (5th Cir.1976); *Arechiga v. Texas,* 469 F.2d 646, 647 (5th Cir.1972); *Harrington v. U.S.,* 444 F.2d 1190, 1194 (5th Cir.1971).

"It is equally clear under *Bordenkircher* —contrary to the District Court's findings—that the chronology of events in which the prosecutor enhanced Ehl's indictments is not decisive. In *Bordenkircher,* the prosecutor did not actually obtain the recidivist indictment until after the plea negotiations had ended. However, his intentions to do so was clearly expressed at the outset, and the accused in that case was

fully aware of the terms of the plea offer when he made his decision to plead not guilty. The Court thus reached the conclusion that '[a]s a practical matter, in short, this case would be no different if the grand jury had indicted Hayes [defendant] as a recidivist from the outset and the prosecutor had offered to drop that charge as part of the plea bargain.' *Bordenkircher,* 434 U.S. at 361, 98 S.Ct. at 666, 54 L.Ed.2d at 609. Once again, the key to disarming an allegation of vindictiveness is the knowledge and awareness by the accused of the terms of the plea bargain and the price of rejecting the bargain with a plea of not guilty.

"Also persuasive is this Court's holding in *Chapman v. Estelle,* 593 F.2d 687 (5th Cir. 1979), where we stated that in those cases that involved belated rejections of a plea bargain, the prosecution's action in securing resentencing on a more serious charge does not appear even 'minimally vindictive.' *Chapman,* 593 at 690 n. 5. And this is especially so where the accused, as in the present case, presents little reason for rejecting the plea bargain or a motion for new trial other than general dissatisfaction with the sentence. Id.; see note 1, supra.

"We have not found a case from any jurisdiction that holds that a defendant can accept a plea bargain, take back his part of the bargain, insist upon a trial on the merits, and yet bind the prosecutor, and thus the Court, on the original promised recommendation of punishment after the prosecutor has lost all benefits of the bargain. To permit this situation would undercut the entire purpose and aim of the plea bargaining process. Rather, two results should flow from the accused's rejection. First, the prosecutor under the authority of *Bordenkircher* and *Chapman* should be able to carry through with any expressed promises made if the accused persists in a plea of not guilty. Second, the prosecutor should not be required under the Constitution to proffer again the identical deal, since it would again be rejected by the defendant, who not only now wishes to plead not guilty and contest the charge, but additionally believes that the earlier negotiated punishment was excessive in any event. In short, if the defendant refuses to carry out his part of the bargain, the prosecutor is under no obligation to carry out his part. And there is no appearance of prosecutorial vindictiveness—and, in addition, no necessity for the prosecutor to offer any explanation for his actions—where the punishment fixed is the same punishment he had promised to seek throughout plea negotiations in the event that the defendant insisted on his right to plead not guilty and contest guilt.

### "III.

"In support of his allegations of 'judicial vindictiveness', Ehl looks again to the *Pearce* case, which requires:

> Whenever a Judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully approved on appeal.

*Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. Once again, in following this Court's recent pronouncement in *Frank,* we reject the applicability of *Pearce* when a plea bargaining situation is present, and look instead to *Frank* for instruction.

"Ehl attempts to convince us that *Frank* can be distinguished because the trial court in *Frank* sentenced the accused only one time—after a disrupted plea bargain rather than after a new trial. In *Frank,* the Judge agreed to a twenty year sentence in return for a guilty plea. Frank rejected the offer, stood trial, was found guilty and received a thirty-three year sentence. *Frank,* at 875. In Ehl's case, the Judge imposed two five-year concurrent terms pursuant to guilty pleas, a waiver of appeal and a dropping of the enhancement charges. Subsequently,

Ehl sought and was granted a withdrawal of his guilty plea. This had the effect of repudiating the plea agreement and the necessity of his standing trial on the enhanced indictment.

"Ehl argues that the factors creating a 'reasonable likelihood of vindictiveness' in *Pearce*—the increased sentence following a new trial—are present in Ehl's case, but lacking in *Frank*. Ehl submits this difference is fundamental and, consequently, *Pearce* should be controlling. We disagree.

"Both Frank and Ehl ultimately rejected the plea bargains and chose to contest their guilt by standing trial. The fact that they opted to exercise their constitutional rights at different stages of the legal process does not determine the ultimate issue of judicial vindictiveness. The critical factor is, rather, the presence or absence of plea negotiations. *Frank* makes it clear that once there is a bargain—whether it be reduced charges, a recommended sentence, or some other concession—and it is rejected, 'the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system.' *Frank,* 646 F.2d at 883.

"The trial judge in the present case cannot be held to have acted vindictively by imposing on Ehl a sentence expressly agreed to by him and the prosecutor after he exercised his unqualified, uncoerced right to stand trial and at a time he did not know whether he would or would not be found guilty.

"In addition, the trial judge had the benefit of hearing the trial testimony, was aware of Ehl's prior record, and the sentence was not greater than that prescribed by statute. *Blackmon v. Wainwright,* 608 F.2d 183 (5th Cir.1979). Finally, since the allegations of judicial vindictiveness are to a great extent dependent upon the assertion of prosecutorial vindictiveness which we have found wanting, this claim also fails." (Footnotes omitted.)

`Clearly the facts in the instant case are not on all fours with Ehl's case, but the Fifth Circuit's opinion is persuasive. Appellant entered a plea bargain with the State for a punishment of ten (10) years' imprisonment and pleaded guilty before the court. The agreed penalty was imposed, but it was soon discovered the Court's jurisdiction had never been invoked by a proper State's pleading, an indictment or felony information.

After an indictment had been presented, the appellant sought to quash it on the basis of double jeopardy. At the hearing on appellant's motion, it was shown that at the time of the original plea bargain appellant and his counsel were aware of the 1973 conviction for possession of marihuana. At the hearing, it was also shown that after indictment the State had again offered the appellant the same ten year plea bargain if he entered a guilty plea, and that this was rejected by the appellant. After the double jeopardy motion was overruled, the appellant did enter a guilty plea before the court. The State produced evidence to support such plea as well as evidence of the 1973 marihuana conviction. The State made no recommendation to the court as to punishment. The court then assessed appellant's punishment at twelve (12) years' imprisonment.

In *Pearce* and *Blackledge* there were contested trials on pleas of not guilty followed by convictions from which appellant obtained relief by way of appeal, etc., and thereafter a more severe punishment was assessed upon the second trial.

Here there was a plea bargain followed by a guilty plea. Although it appears appellant filed a motion for new trial, the whole proceedings were a nullity because the court had no jurisdiction.

When an indictment was returned, the State offered the same plea bargain, but this was rejected by the appellant, who nevertheless entered a guilty plea to the indictment with the State making no recommendation as to punishment. Although the prior conviction was introduced, I do

not conclude that *Pearce* and *Blackledge* control under the circumstances of the case.

I would grant the State's motion for rehearing, withdraw the order for reassessment of punishment and affirm the judgment.

The majority seems to give no consideration to the fact that the court had no jurisdiction over the initial proceedings. It seems overly obsessed in pointing out all examples of ineptness, both real and imagined, occurring in the court below. Further, it infers that the State withdrew all recommendations because the appellant refused to act without counsel. Such inference is based on the drawing of an Indian tepee on several portions of the record which indicates to the majority the cryptogram for the prosecutor's initials. The majority then assumes that because a tepee is found on the order appointing counsel for appellant the conclusion is compelled the plea bargain was withdrawn because the appellant exercised his right to counsel. So much for the trip to Disneyland. I dissent for the reasons stated.

TOM G. DAVIS and W.C. DAVIS, JJ., join this dissent.

ODOM, Judge, dissenting.

In *Alvarez v. State,* 536 S.W.2d 357, 364 (Tex.Cr.App.1976) the Court held:

"We perceive no reason why an accused who changes his plea from guilty to not guilty on retrial should be able at the same time to hold the State to the punishment sought or secured at the first trial."

Although appellant here did not change his plea to not guilty, he did reject on retrial the plea bargain of the first trial. The same principle as that announced in *Alvarez* would apply, as was stated in *Bouie v. State,* 565 S.W.2d 543, 546 (Tex.Cr.App. 1978):

"If a defendant withdraws on retrial from a bargain obtained at the first trial, an increased punishment would be a legitimate response of the State to the defendant's rejection of that agreement.

This is based on the teaching of *Bordenkircher v. Hayes,* [434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)]."

Appellant personally testified that he rejected the plea bargain. Having done so, he should not be allowed to complain about the consequences.

W.C. DAVIS, J., joins this opinion.