**William Charles CASTLEBERRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 166–83.**

Court of Criminal Appeals of Texas, En Banc.

July 18, 1984.

Rehearing Denied Feb. 12, 1986.

Brian W. Wice, Houston (court appointed on appeal), for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr., Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Before us on State's petition for discretionary review is the Houston (1st) Court of Appeals' vacation of appellant's 20 year sentence assessed by the trial court pursu-

ant to his jury conviction for burglary of a habitation.

The record reveals appellant was indicted for burglary of a habitation, a first degree felony,[1] alleged to have been committed on or about December 17, 1981. The indictment included a repeater paragraph which further alleged appellant had been previously finally convicted of burglary of a motor vehicle.[2]

Approximately two months after return of the indictment, appellant entered a plea of no contest before the trial court sitting without a jury, on March 2, 1982. The State at that time introduced appellant's written waiver of rights and stipulation of evidence as State's Exhibit No. 1. The written stipulation reflects the State abandoned the repeater paragraph in exchange for appellant's plea, and recommended twelve years confinement. The transcription of the court reporter's notes reveals the trial court admonished appellant on the first degree felony then accepted his plea upon the prosecutor's assertion, and appellant's agreement, that the term of years recommended constituted the plea bargain between the parties. Appellant was found guilty and his punishment was assessed at twelve years.

Within the succeeding six days, and while still confined in the county jail, appellant apparently wrote a letter to the trial judge; he told the judge he did not understand what had happened, the proceeding had gone too fast, he did not agree with what his attorney had done and thought he had gotten a "bad deal."

On March 8, 1982, the trial judge had appellant brought in to discuss his letter. Appellant told the court he wanted a jury to try his case. The trial judge evidently explained to appellant that if he insisted on a jury trial on the original indictment and was found guilty, and the repeater paragraph were proved, the minimum punish-

---

1. V.T.C.A. Penal Code, § 30.02(d)(1).

2. Thus, in the event of conviction and upon a finding the repeater allegation was "true," the applicable punishment range was "for any term

of *not* more than 99 years or *less than 15 years.*" V.T.C.A. Penal Code, § 12.42(c).

(All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

ment would be fifteen years (three more than was assessed pursuant to the plea bargain). Appellant persisted. On the same day, a form motion for new trial was submitted by defense counsel; it alleged only "that the judgment of the Court is contrary to the law and evidence...."

The trial judge immediately entered an order granting a new trial.

Thereafter, on March 23, and 24, 1982, appellant was tried by a jury which returned a verdict of guilty. Having elected to have the trial court assess punishment, appellant was asked for his plea on the repeater allegation. He personally entered a plea of "true."

The trial court then, "[f]or purposes of the record" observed that appellant had initially entered a plea in this cause, "and on recommendation of the State and through a plea bargain arrangement in which the enhancement count [sic] was abandoned by the State, they recommended twelve years." Appellant voiced his agreement. The trial judge continued:

"Fine. And you entered a plea to that and I assessed your punishment at twelve years, and then you wrote a letter to me from the jail stating you did not understand what had happened, that we had taken you too fast, and you did not agree with what your attorney had done and you thought you had gotten a bad deal, and I put you back on the docket ... and you were brought back in and I discussed the matter with you and you asked for a new trial and I granted your motion for new trial, because you wanted a jury to try your case, and I did that,

which brings you here, and the jury having found you guilty of burglary of a habitation, which is a first-degree felony, and the enhancement count [sic] has now been proved, which means your minimum punishment is fifteen years. Well, I explained all that to you before. You know I buy you books and I buy you books, but I can't make you do it."

The trial judge then assessed appellant's sentence at twenty years confinement.

■ In the court of appeals, Tex.App., 646 S.W.2d 599, appellant contended the trial court had erred and, in fact, exhibited "judicial vindictiveness" by increasing his sentence from twelve to twenty years after "permitting him to withdraw his earlier plea of guilty [sic]." Appellant argued his case was "indistinguishable" from *Palm v. State*, 656 S.W.2d 429 (Tex.Cr.App.1983) [hereinafter *Palm* ] and, therefore, the rule of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) [hereinafter *Pearce* ] should operate to prevent this increase in punishment.[3]

The Harris County District Attorney conceded this cause would be governed by *Palm*, which had in turn relied on *Pearce*. Accordingly, the court of appeals held the increased punishment constituted error, because "the record does not indicate any factors which may have occurred after the time of the original sentencing, and which were considered by the trial judge as the basis for his enhanced [sic] punishment."

We granted the State Prosecuting Attorney's petition for discretionary review in order to determine whether the rule in

---

**3.** The rationale of *Pearce* is, in essence, that due process of law is violated if a convict suffers an increase in punishment as a direct result of his having exercised a constitutional or statutory right to present legal errors to a higher court, and having succeeded. The Supreme Court also reasoned that "the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional [and statutory] rights,'" 395 U.S. at 724, 89 S.Ct. at 2080, and concluded "due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge." 395 U.S. at 725, 89 S.Ct. at 2080.

Accordingly, the Court held:

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."

395 U.S. at 726, 89 S.Ct. at 2081.

*Pearce* is applicable under the facts of this case.

We conclude the rationale of *Pearce* does not and cannot apply to the instant case simply because appellant never exercised his statutory or constitutional right to review by a higher court. Simply stated, he never got that far. Therefore, what happened to him in terms of increased punishment cannot under any interpretation be attributed to an unconstitutional response to exercise of those rights—a response condemned in *Pearce*.

## I.

This conclusion is compelled by orderly consideration of constitutional concepts developed by and since *Pearce* to which we now turn.

### JUDICIAL VINDICTIVENESS

In *Pearce*, the Court apparently acknowledged that, when faced with a determination by a reviewing court that a trial was legally infirm to the extent a new trial is required, the judge who presided over that trial might react both negatively and personally to the criticism of him inherent in such a determination. Recognizing the potential effect of such a reaction on the part of the affected trial judge,[4] the Supreme Court fashioned its prophylactic rule, expressing ultimate concern that no person convicted of a criminal offense be dissuaded from invoking constitutional or statutory procedures of right for attacking the legality of his conviction. See n. 3 *ante.*

### PROSECUTORIAL VINDICTIVENESS

In *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court delineated a very narrow due process violation extant in *prosecutorial* vindictiveness exhibited by "upping the ante" with a felony indictment after a convicted misdemeanant pursued his statutory appellate remedy of trial *de novo.*

Four years later, the Supreme Court clearly distinguished the circumstances in *Blackledge* from the situation in which pretrial plea negotiations between the accused and the State break down and the State then makes good promises regarding its posture in response to the accused's refusal to plead guilty.

> "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action, whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' [citation omitted.] But in the 'give-and-take' of plea bargaining, *there is no such element of punishment or retaliation* so long as the accused is free to accept or reject the prosecution's offer."

*Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

The Court recognized " 'the mutuality of advantage' to both defendants and prosecutors, each with his own reasons for wanting to avoid trial" which underlies plea bargaining and observed that "acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense...." 434 U.S. at 363, 98

---

**4.** See and compare *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) [wherein *Pearce* was held inapplicable since the court that imposed the increased sentence after retrial was not the one whose original judgment had precipitated an appellate reversal; the Supreme Court reasoned that under such circumstances there was little possibility that an increased sentence on trial *de novo* could have been motivated by personal vindictiveness on the part of the ultimate sentencing judge].

Accord *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) [wherein an increased sentence assessed by a jury upon retrial was held not a violation of the *Pearce* rule. "It was noted that the second jury was completely unaware of the original sentence, and thus could hardly have sought to 'punish' Chaffin for his successful appeal. Moreover, the jury, *unlike a judge who had been reversed on appeal,* could hardly have a stake in the prior conviction or any motivation to discourage criminal defendants from seeking *appellate review.*" 417 U.S. at 27, 93 S.Ct. at 1983].

S.Ct. at 668. Conceding that confronting an accused with the risk of more severe punishment may have a discouraging effect on his assertion of *trial* rights, the Court stated that presenting such "difficult choices" to the accused is both inevitable and permissible in a system which encourages negotiation of pleas.

> "It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that *the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty*."

434 U.S. at 364, 98 S.Ct. at 668.

Unstated, then, is the concomitant that it is constitutionally permissible for the prosecutor to exercise his discretion by "punishing" a defendant who insists on asserting his right to trial in spite of concessions offered; indeed, it is the threat of this very sanction which supplies the strength of the prosecutor's bargaining position during negotiations.

Only eighteen months after *Bordenkircher* was decided, the En Banc Fifth Circuit applied its rationale to the *post*-trial withdrawal from a negotiated plea by the defendant in *Chapman v. Estelle*, 593 F.2d 687 (CA5 1979). The determining factor in the court's decision was the "particular reason" the defendant requested the trial judge grant him a new trial: the defendant was dissatisfied with the sentence he had accepted under the plea agreement and stated he wished he had taken his chances on trial of the original indictment. The Court held at 690:

> "In such a situation it would be futile for the prosecutor to reoffer the bargain [the defendant] had just succeeded in vacating."

## A MELDING OF PRINCIPLES

Thus far, the distinction between *prosecutorial* vindictiveness and *judicial* vindictiveness, and the variant policies underlying development of each line of cases, had been scrupulously observed by the courts.

In *Frank v. Blackburn*, 646 F.2d 873 (CA5 1980), however, the court obfuscated the principles—no doubt an inevitable result of the melded roles of prosecutor and judge revealed by the facts of the case.

The decision in *Frank* was prompted by plea negotiations conducted in the trial judge's chambers, once pretrial and again midtrial. On both occasions the judge, in response to request by defense counsel, stated he would sentence Frank to a period of 20 years in return for a plea of guilty. Frank rejected these "offers" from the court, was convicted by a jury and subsequently sentenced by the trial judge to 33 years confinement. On collateral attack, Frank contended *judicial* vindictiveness was evidenced by the 13 year sentence increase made solely to punish him for exercising his right to trial.

After recounting the history and acknowledged legitimacy of the plea bargaining process, the court observed:

> "Once the bargain—whether it be reduced charges, a recommended sentence, or some other concession—is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness.  \* \* \*  If a defendant can successfully demand the leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial."

646 F.2d at 883. Having applied the constitutional rationale governing *prosecutorial* vindictiveness to a *judicial* action in a rather confused context, the court surveyed the record of the case and found no evidence to support Frank's allegations of actual vindictiveness. But then the court expressed the following:

> "We find the rule of *North Carolina v. Pearce* to be completely inapplicable to post-plea bargain sentencing proceedings. *Accord Martin v. Blackburn*, 606 F.2d 92, 93 (CA5 1979), *cert. denied*, 446 U.S. 911, 100 S.Ct. 1841, 64 L.Ed.2d 265 (1980) ('it is highly questionable whether

*Pearce* applies to plea bargaining situations'). As the [*Martin*] panel pointed out, *Pearce* held that a defendant must not be penalized for asserting his right to a new trial by the imposition of a longer sentence than he received at the first trial.[5] The *Pearce* rule applies only to sentencing after a retrial, and even in that situation, 'the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness." ' *Blackledge v. Perry,* 417 U.S. 21, 27 [94 S.Ct. 2098, 2102, 40 L.Ed.2d 628]...." [Emphasis original.]

This erroneous use of the quote in *Martin* by the *Frank* court set the stage for the Fifth Circuit panel opinion in *Ehl v. Estelle,* 656 F.2d 166 (CA5 1981), the rationale of which our state prosecuting attorney today argues "is now firmly established as a part of the jurisprudence of this State," citing opinions on motion for rehearing in *Palm v. State,* supra.[6]

Awaiting trial on two felony charges, Ehl agreed to enter pleas of guilty and waive appeal in exchange for the prosecutor's agreement not to seek habitual offender status. After entering his pleas but before his transfer to the State penitentiary, Ehl wrote a letter to the trial judge which stated the prosecutor's position in negotiations had "coerced" him to accept the plea bargain[7] and protested his innocence of one of the offenses. The trial judge convened an evidentiary hearing after which he allowed Ehl to withdraw his plea on one charge and permitted him to appeal the other. The conviction appealed was affirmed by this Court[8] and a habitual indictment was returned in the other cause.

While a jury was deliberating the issue of Ehl's guilt in the indicted cause, another agreement was reached: if the jury found Ehl guilty, the enhancement allegations would be abandoned and the State would recommend a sentence of 10 years confinement to begin on expiration of the sentence in the affirmed conviction. As the panel put it,

> "In short, Ehl had traded guilty pleas with no appeals and concurrent five year sentences, for one unsuccessful appeal, one unsuccessful trial ... and ... consecutive sentence[s] [totalling 15 years]."

656 F.2d at 168.

Displeased with this outcome, Ehl pursued collateral attacks, alleging the increased charges in the indictment constituted prosecutorial vindictiveness and the increased sentence amounted to judicial vindictiveness.

The Fifth Circuit rejected Ehl's claims: The allegation of prosecutorial vindictiveness was foiled on the rationale of *Bordenkircher v. Hayes* and its sanction of the plea bargaining process; the contention regarding judicial vindictiveness was rejected, essentially because the trial judge had merely followed the recommendation negotiated by the parties and, of course, agreed to by Ehl.

## II.

■ To these extents *Ehl* is unquestionably correct. But rather than untangle the confusion of prosecutorial vindictiveness with judicial vindictiveness precipitated by the aberrant facts of *Frank,* the *Ehl* court—dealing *only* with a claim of *judicial* vindictiveness in which the trial judge played no part in negotiating the plea—unnecessarily added this:

---

5. In *Martin v. Blackburn,* supra, the opinion of the panel made little effort to characterize the complaint before it as either prosecutorial vindictiveness or judicial vindictiveness. But a close reading of the case indicates one complaint was leveled at the trial court's assessment, *pursuant to a plea bargain,* of a 24 year sentence after Martin's rape conviction had been reversed on appeal.

Obviously, in such a context, the application of *Pearce* would verge on absurd. See n. 9, *post.*

6. We note here that in *Palm,* a majority of the Court held only that the rationale of *Ehl* did not govern the facts of that case; the reasoning of *North Carolina v. Pearce* was instead held to be controlling.

7. The "threat" was, of course, trial on a habitual indictment.

8. *Ehl v. State,* 557 S.W.2d 123 (Tex.Cr.App.1977) (*Per Curiam* unpublished).

"Once again, in following this Court's recent pronouncement in *Frank*, we reject the applicability of *Pearce* when a plea bargaining situation is present, and look instead to *Frank* for instruction. * * The critical factor is ... the presence or absence of plea negotiations. *Frank* makes it clear that once there is a bargain—whether it be reduced charges, a recommended sentence, or some other concession—and it is rejected, 'the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness. To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system.' *Frank*, 646 F.2d at 883."

With deference, we conclude this *dicta* from *Ehl* cannot be squared with the rationale of, and policies underlying, *Pearce*. The cases, however, can be harmonized. Rather than literally, we read *Ehl* to stand for the proposition that the determining factor in analyzing claims of *judicial* vindictiveness is whether the defendant has withdrawn from a negotiated plea agreement at any time *in the trial court*, as opposed to persuading a *reviewing court* that his conviction is defective upon his exercise of his right to appeal or collateral attack. We accordingly hold the existence of a plea bargain, of and by itself, does not preclude application of the rationale of *Pearce*. Accord *Simpson v. Rice*, infra; and *Palm*, supra.

## JUDICIAL VINDICTIVENESS

■ Of all the cases surveyed here, the only one which found judicial vindictiveness is *Pearce*. We need not recount the policies underlying that decision in order to see that they are not implicated by circumstances such as those presented in *Ehl* or in the instant case.[9] Neither Ehl nor appellant appealed his conviction on legal grounds to a higher court; instead, each merely expressed dissatisfaction with the bargains and sentences. The trial judges themselves made the new trials available. Thus, neither trial judge had the *motivation* for vindictiveness recognized by *Pearce* as the basis of its rule.

■ What each trial judge did, in effect, was allow Ehl and appellant to withdraw their pleas—something neither has a "right" to do after the trial judge takes the case under advisement or pronounces judgment. *DeVary v. State*, 615 S.W.2d 739 (Tex.Cr.App.1981); *Jackson v. State*, 590 S.W.2d 514 (Tex.Cr.App.1979). It is irrelevant that this occurred after judgment rather than before. Neither does the fact that a motion for new trial was filed and granted in the instant case change appellant's patent rejection of the bargain agreed upon, into an appeal on legal grounds to a higher court.[10]

It is therefore clear that, in the instant case, the ultimate sentence could not "chill" the exercise of rights to appeal or collateral attack by others in the future. It appears appellant got exactly what he asked for: a new trial before a jury without the constraints of the plea bargain. Having simultaneously rejected the protections of that bargain, he cannot now be heard to complain that the trial judge's

---

**9.** *Ehl* does differ from this case in a crucial respect. He entered into a *second* plea bargain including a sentence recommendation that *the trial judge followed*! Certainly when a trial judge follows a recommendation for punishment devised and agreed upon by the parties, any claim of judicial vindictiveness in sentencing is utterly spurious.

**10.** First of all, motion for new trial is not a prerequisite to perfecting appeal; the few grounds of error which require supplementation of the record for preservation and, there-

fore, a motion for new trial, were not even suggested here.

Moreover, since neither the State nor the trial judge may move for a new trial (even when their agents find fundamental defects in convictions) motions for new trial are filed for many reasons in Texas other than that the defendant is invoking his right to appeal. See, e.g., *Palm*. In fact by all appearances the motion for new trial filed here—like the one filed in *Palm*—was filed for the sole purpose of authorizing the trial court to order formally what he had already decided to do: grant a new trial.

failure to afford them nevertheless, creates a presumption of judicial vindictiveness.[11]

Moreover, to bind *per se* the trial court as sentencer to the punishment previously devised and offered by the prosecutor but rejected by an accused, would serve no legitimate purpose whatever; indeed, such a restriction would have the indirect effect of abolishing the practice of negotiating pleas. While we do not intend to confuse respective and necessarily different roles of prosecutor and judge, it is clear that, as a matter of federal constitutional law, the trial judge also has a legitimate interest in the encouragement of guilty pleas. *Frank v. Blackburn.* Thus, we are loath to presume unconstitutional motivation to punish is established on the part of the sentencer by the "mere imposition of a longer sentence than defendant would have received had he" honored the bargain. *Id.,* at 883.

■ By contrast, had our appellant leveled a legal complaint regarding his plea hearing which was sustained by the court of appeals, his posture on retrial would be markedly different. In such a case, were

he to go to the court for assessment of punishment, the trial judge would be bound by dictates of *Pearce,* notwithstanding the fact that the original conviction was had on a plea under a negotiated agreement.[12] Furthermore, any suggestion made in our opinion in *Palm* to the effect that an appeal or collateral attack on a conviction obtained on a plea bargain, by itself constitutes a "withdrawal from the bargain" for purposes of analyzing *judicial* vindictiveness, is disapproved and limited by our analysis herein.[13]

Having determined that *North Carolina v. Pearce* does not apply to the instant case, we observe appellant has never claimed his sentence was a product of actual vindictiveness on the part of the sentencing judge.

## APPLICATION OF EHL

■ While appellant has consistently couched his complaint in terms of *judicial* vindictiveness, he advances the argument that *Ehl* should not apply to his case because, even if he withdrew his plea and

11. Appellant's contention that the trial judge should have assessed the same 12 year sentence as that assessed under the plea bargain is tantamount to contending the trial court should also have dismissed the repeater allegation from the indictment *sua sponte.* See n. 2, *ante.* And this in the face of appellant's having pled "true" to that allegation!

12. The companion case to *Pearce* is easy to overlook. See *Simpson v. Rice,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In that case, William Rice pleaded guilty—apparently pursuant to a plea bargain—to four charges of burglary in an Alabama trial court. He was sentenced to four, two, two and two years to be served consecutively, for a total of ten. Rice's judgments were subsequently set aside in a state coram nobis proceeding because he had been without counsel at the time of his convictions. After retrial, he was sentenced to terms aggregating 25 years.

The Supreme Court's ruling in *Pearce* applied as well to Rice.

Clearly there is no compelling reason whatever to abandon the reasoning of *Pearce* simply because a conviction has been obtained under a plea bargaining agreement between the defendant and the prosecutor: persons who have been so convicted continue to have constitutional and

statutory rights to make orderly claims regarding defects of law in their convictions. And when such claims are sustained by appellate courts, the prohibition against *judicial* vindictiveness pronounced by *Pearce* applies with equal force.

13. In *Palm,* the new trial was generated by the district clerk's discovery that the State had failed to either have the defendant indicted or have the defendant waive indictment. Since the new trial was not occasioned by any action, appeal or otherwise, on the part of the defendant, *Palm,* the underpinnings of *Ehl* were not critically assayed in the respects held determinative here.

Instead, the issue before the Court on rehearing in *Palm* was couched in terms of whether *Pearce* or *Ehl* should control under the facts presented. Thus, while it is clear the facts in *Palm* did not include a successful appellate attack by the defendant as in *Pearce,* it is equally clear that due process was violated by increasing *Palm's* sentence upon a retrial which was necessitated by the prosecutor's error which constituted a fundamental defect in the first trial.

Since the record in *Palm* did not establish the defendant withdrew from the plea bargain, the rationale of *Pearce* was surely more applicable than that of *Ehl.*

insisted upon a trial, the record fails to reflect he was aware of and knew the price of rejecting the bargain. The genesis of the requirement that a defendant be aware of the price of rejecting the bargain is cases involving allegations of *prosecutorial* vindictiveness. No such claims have been made here. We will nevertheless address appellant's "hybrid" contention.

Specifically, appellant argues he was only admonished of first degree felony punishment range at the time of entering his plea under the bargain (and not of the 15 year minimum applicable under an indictment containing the repeater allegation which had been dismissed); he points to the fact that the only evidence affirmatively suggesting that he had been informed of what could happen in the event he withdrew from the bargain was "an isolated remark made by the trial court well after [appellant] had" abandoned the bargain and insisted upon a trial in which he had been found guilty. He contends the content of the trial court's remark is not otherwise supported by the record.

These arguments are unpersuasive.

The original indictment returned in this cause contained the repeater allegation. Cf. *Bordenkircher v. Hayes* ["While the prosecutor did not actually obtain the recidivist indictment until after the plea conferences had ended, his intention to do so was clearly expressed at the outset of the plea negotiations. * * * As a practical matter, in short, this case would be no different *if the grand jury had indicted Hayes as a recidivist from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain*." 434 U.S. at 360–361, 98 S.Ct. at 666–667]. Thus, appellant had notice from the indictment that the prior conviction could be used in this cause.

While this notice alone may be adequate to infer appellant's knowledge, there is more. The written stipulation of evidence introduced by the State upon appellant's plea clearly shows the repeater allegation was crossed out. This stipulation was of course signed by both appellant and his attorney. Moreover, the trial judge asked defense counsel during the plea hearing whether he was satisfied that appellant appreciated "the nature of this proceeding and the consequences of his plea." Counsel replied, "Yes, Your Honor. We have discussed it thoroughly."

The record also reflects that after appellant had been convicted by a jury but before his sentence was assessed, the trial judge, recounting the events of the case, stated, "And on recommendation of the State and through a plea bargain arrangement in which *the enhancement count [sic] was abandoned by the State*, they recommended twelve years." Appellant personally replied, "Yes." And finally, we are unwilling to dismiss so readily the trial judge's assertion that *he* had explained to appellant the increased minimum sentence which would result from his rejection of the bargain, before appellant withdrew his plea. Neither appellant nor his attorney contradicted this; in fact, appellant entered a plea of "true" to the repeater allegation!

Under these circumstances, we hold the record as a whole illustrates ample notice to appellant of the price of reneging on the plea bargain and we reject appellant's argument to the effect that the trial judge had a duty to admonish him of the consequences of his rejecting the plea agreement.[14]

The judgment of the court of appeals is reversed; the judgment of conviction is affirmed.

ODOM, J., concurs in result.

ONION, P.J., and TEAGUE, J., dissent.

---

14. We are reminded by this last contention of *Wooldridge v. State*, 653 S.W.2d 811, 814, n. 7 (Tex.Cr.App.1983) in which it was observed:

"The responsibility of having a 'firm command of the facts of the case as well as governing law' in order to assist and advise one criminally accused is not one placed on the State.... See *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980)."

## OPINION ON APPELLANT'S MOTION FOR REHEARING

W.C. DAVIS, Judge.

On original submission we affirmed appellant's conviction, holding that appellant's "withdrawal" from his negotiated plea in the trial court, his subsequent trial and conviction by a jury, and the imposition by the trial judge of a sentence more severe than that originally imposed under the terms of the plea bargain, does not implicate *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). After reconsideration of appellant's contention, we abide by our original opinion. The motion for rehearing is denied.

TEAGUE, J., dissents.

ONION, Presiding Judge, dissenting.

Shamelessly the majority overrules appellant's motion for rehearing even though the opinion on original submission is in conflict with other opinions of this Court dealing with *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This conflict was ignored in the opinion on original submission, and was the basis for this writer's earlier dissent without written opinion. Now over a year and a half after the filing of appellant's motion for rehearing urging that the majority was wrong on original submission, the majority finally decides to respond by overruling the motion for rehearing with a brief opinion still ignoring the conflict and mischaracterizing the facts as a "withdrawal" of plea, when the motion for new trial was filed and granted.

Appellant was indicted for burglary of a habitation. A prior conviction for burglary of a motor vehicle was also alleged for enhancement of punishment. About two months later appellant entered a plea of nolo contendere to the primary offense before the court, waiving trial by jury. The State waived and abandoned the paragraph of the indictment alleging the prior conviction for enhancement purposes. As a result of a plea bargain the court assessed appellant's punishment at 12 years' imprisonment for the primary offense.

A few days later, by letter to the trial court, appellant indicated his dissatisfaction with the "deal" he got, claimed a lack of understanding as to what happened. After a discussion with the trial court, a motion for new trial was filed by appellant's counsel and it was granted by the trial court.

Several weeks later appellant was tried before a jury which found him guilty of the primary offense. The penalty stage of the trial was conducted before the court. Appellant entered a plea of "true" to the enhancement allegations. The court assessed appellant's punishment at 20 years' imprisonment, an increase of eight years over that at the first trial.

On appeal appellant contended the trial court exhibited "judicial vindictiveness" by increasing the penalty assessed, citing *North Carolina v. Pearce*, supra. In light of *Pearce*, *Ex parte Bowman*, 523 S.W.2d 677 (Tex.Cr.App.1975), and *Palm v. State*, 656 S.W.2d 429 (Tex.Cr.App.1983), the Court of Appeals vacated the judgment and remanded the cause to the trial court for reassessment of punishment.

We granted the State's petition for discretionary review. The State argued the Court of Appeals erred because the presumption of vindictiveness of *Pearce* need not be applied on a second trial where the punishment assessed at the first trial was the result of a plea bargain which appellant breached by successfully seeking a new trial.

The majority of this Court on original submission then wrote:

"We conclude the rationale of *Pearce* does not and cannot apply to the instant case simply because appellant never exercised his statutory or constitutional right to *review by a higher court.* Simply stated, he never got that far. Therefore, what happened to him in terms of increased punishment cannot *under any interpretation* be attributed to an unconstitutional response to exercise of those rights—a response condemned in *Pearce.*" (Emphasis added.)

In the past, however, this Court has also applied the rationale of *Pearce* to cases where a new trial was granted by the trial court without an appeal, without the defendant ever exercising his constitutional or statutory right to review by a higher court. See *Payton v. State,* 506 S.W.2d 912 (Tex.Cr.App.1974); *Ex parte Bowman,* 523 S.W.2d 677 (Tex.Cr.App.1975); *Moore v. State,* 527 S.W.2d 529 (Tex.Cr.App.1975); *Lechuga v. State,* 532 S.W.2d 581 (Tex.Cr. App.1975); *Palm v. State,* 656 S.W.2d 429 (Tex.Cr.App.1983).

While the rationale of applying *Pearce* in these cases was not there discussed, it was discussed in *McCullough v. State,* 680 S.W.2d 493, 497 (Tex.App.—Amarillo 1983) (opinion on rehearing). There it was written:

> "The State argues that this case materially differs from *Pearce* because this appellant was granted a new trial by the trial judge, not by an appellate court. Although that is a difference, it is not a distinction. The purpose of *Pearce* is to forbid vindictiveness against a defendant who successfully pursues post-conviction remedies. As quoted from *Pearce* in our original opinion, due process 'requires that vindictiveness against a defendant *for having successfully attacked his first conviction* must play no part in the sentence he received after a new trial.' 395 U.S. at 725, 89 S.Ct. at 2080. (Emphasis added.) It is immaterial whether the new trial is obtained by an order from the trial court or by a judgment of an appellate court; the principles stated in *Pearce* still must be observed on retrial."

McCullough was convicted of murder by a jury which assessed his punishment at 20 years' imprisonment. His motion for new trial was granted by the trial court. A second jury found him guilty, but McCullough elected to have the trial court assess punishment. She did and assessed 50 years' imprisonment. The Amarillo Court of Appeals found the principle of *Pearce* violated, although there was no appeal to a higher court, and reassessed punishment at 20 years. The Court of Criminal Appeals on its own motion granted discretionary review, reversed, found reformation was not proper and remanded to the trial court for assessment of punishment in accordance with *Pearce.* In an opinion on State's motion for rehearing the Court found the prophylactic rule of *Pearce* applicable to the case and overruled the rehearing motion. *McCullough v. State,* (Tex.Cr.App. No. 351–83, Dec. 5, 1984). It is observed that McCullough was decided after the instant case on original submission.

Certiorari has now been granted by the United States Supreme Court in *Texas v. McCullough,* —— U.S. ——, 105 S.Ct. 2699, 86 L.Ed.2d 716 (1985).[1]

*Jackson v. State,* (Tex.Cr.App., No. 977–82, July 24, 1985), affirmed the Court of Appeals, *Jackson v. State,* 662 S.W.2d 74 (Tex.App.—San Antonio 1983), finding the defendant had been deprived of the effective assistance of trial counsel. The defendant Jackson was convicted at his second trial of the actual delivery of heroin and his punishment was assessed at 25 years' imprisonment by the jury after finding as "true" an allegation of a prior felony conviction alleged for enhancement of punishment. The defendant alleged that at his first trial he had pleaded guilty before the court to the same charge and enhancement allegations and the court assessed his punishment at 15 years' imprisonment as a repeater offense. Subsequently the trial court granted a new trial apparently because of a defective indictment. At his

---

1.  The questions presented are:
    "1. Whether a presumption of vindictive sentencing attaches when the trial judge grants the defendant's motion for new trial, the defendant elects to be sentenced by the judge, and the judge imposes a higher sentence than that imposed by the jury at the first trial.

"2. Whether a presumption of vindictive sentencing can be rebutted by reliance for an increased sentence on new, objective information, not known at the time of the first sentencing but relating to events antedating that sentencing."

second trial before a different trial judge his counsel permitted him to elect a jury to assess punishment and they did at 25 years' imprisonment. In light of *Pearce* he argued that the trial court would have been locked in at 15 years and his counsel's advice assured him 10 extra years in prison.

The Court of Appeals held that this single error of counsel permeated the entire proceeding and demonstrated an obvious lack of knowledge of applicable legal principles governing punishment on retrial by defense counsel. On State's petition for discretionary review, this Court affirmed the Court of Appeals that the single error of "omission" by counsel constituted ineffective assistance.

Just what was this dreadful single error of counsel? It was the failure or omission of counsel to advise the defendant that under *Pearce* the judge was limited in the punishment to be assessed at the second trial after the defendant had successfully attacked his first conviction while the jury was not so limited. What makes *Jackson* an unusual case is that not only did the court abandon the normal standards for determining the effective assistance of counsel but held that *Pearce* applied to the grant of a new trial by the trial court even though there had been no appeal for review by a higher court as the *Castleberry* case held was required by *Pearce*. And strangely enough the opinion on original submission in *Castleberry* had been handed down by the time of the decision in *Jackson* and was mentioned therein. When this Court cannot even decide consistently as to when *Pearce* applies, how can the single error by Jackson's counsel be so dreadful that it permeated the entire case and deprived Jackson of the effective assistance of counsel? Surely *Castleberry* and *Jackson* cannot both be right.

If a defense counsel, whose client has been granted a new trial by the trial court, reads *Jackson*, he will know that if he recommends to the client to elect the jury to assess punishment then by that single error he will be rendering ineffective assistance of counsel. If, however, he has the client elect the trial court to assess punishment, that court may read *Castleberry* and decide that since there was no review and reversal by a higher court, it is free to assess any penalty within the range of punishment fixed by law to the offense charged. If the trial court does then assess a penalty greater than that assessed at the first trial without any basis under *Pearce* for doing so, has it committed reversible error, or has defense rendered ineffective assistance for permitting the defendant to elect the court to assess punishment and for knowing about the conflict between *Castleberry* and *Jackson*?

Much more could be written, but suffice it to say that both before and after *Castleberry* this Court has applied *Pearce* to situations where a new trial has been granted to the defendant and there has been no review by a higher court.

If *Castleberry* is correct, then the other cases should be overruled or clearly distinguished. It serves no purpose to remain silent and pretend they do not exist. We fool only ourselves and confuse the bench and bar who are daily on the firing line. My concern, my deep concern, is that the majority permits this situation to prevail when they know the problem is squarely before the court. They flex their raw judicial muscles and stare straight ahead as if nothing was awry.

I dissent, as my late colleague, Judge W.A. Morrison, used to write, "with all the vigor at my command." [2]

MILLER, J., joins this opinion.

---

**2.** Although not raised, this record shows that at appellant's first trial the State, with consent of the trial court, waived and abandoned the enhancement allegations as to the prior felony conviction. Thus that paragraph passed out of

the indictment and out of the case, and the subsequent granting of the new trial did not breathe new life into the abandoned allegations. See and cf. *Garcia v. Dial*, 596 S.W.2d 524 (Tex. Cr.App.1980).