Manuel Sergio Banuelos AMAYA, Arturo Morales, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–88–00005–CR.

Court of Appeals of Texas, El Paso.

Oct. 5, 1988.

Rehearing Denied Oct. 26, 1988.

738

John Gates, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and WOODARD, JJ.

## OPINION

WOODARD, Justice

This is an appeal from a jury conviction for aggravated assault, enhanced by two prior felony convictions. In a companion case (Appeal No. 08-88-00006-CR) Appellant was convicted of aggravated assault upon the brother of the complainant in this case. The court assessed punishment at thirty-five years' imprisonment in each case. We affirm.

■ Point of Error No. One asserts that the trial court erred in admitting State's Exhibit 2A through 2G and 3 because such exhibits had not been revealed to the defense prior to trial "pursuant to the State's 'open file' discovery policy." The point of error is not subject to review since it fails to comport with the objection lodged at trial, which complains solely of a breach of a pretrial discovery order. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Crim. App.1979). Furthermore, we note that the record before this Court contains no pretrial motion or order for discovery. Tex. Code Crim.Pro.Ann. art. 39.14 (Vernon 1979) provides that a pretrial discovery order shall state the time, place and manner of inspecting prospective exhibits such as those in question. Since this is a case involving not a complete failure to disclose but rather the timing of disclosure, the absence of a record order makes it impossible for this Court to evaluate any alleged breach of discovery by the State, the good or bad faith of any breach which may have occurred and the diligence exercised by the defense in pursuing discovery. See *Lindley v. State*, 635 S.W.2d 541, 543 (Tex.Crim. App.1982). The statement of facts further reflects that these exhibits were not available to the prosecutor until after the first day of trial had concluded (voir dire only). They were shown to defense counsel the following morning. See *Reeves v. State*, 566 S.W.2d 630 (Tex.Crim.App.1978); *Lerma v. State*, 632 S.W.2d 893 (Tex.App.— Corpus Christi 1982, PDRR). Finally, Appellant failed to request continuance or postponement when he first learned of the photographic exhibits, thereby waiving any claim of surprise. *Lindley*, 635 S.W.2d at 544. Point of Error No. One is overruled.

■ Point of Error No. Two complains of the improper introduction of an extraneous offense, consisting of an attempted theft or attempted theft from the person committed upon the younger brother of the two brothers who were the complainants in these companion cases. Thirteen-year-old Matthew Serros was returning to his family apartment with a bag of groceries when he was accosted by two individuals who attempted to take the groceries from him. He fled to his apartment and told his older brothers, Roy and Jeremiah, what had happened. They went out on the second floor balcony walkway to see if the assailants were still present. Seeing no one, they began to talk to people from the adjoining apartment. They were then addressed in a challenging manner by a female on the third floor walkway. That female's two companions then descended and one drew a pistol, pointing it at Jeremiah Serros. The Serros group separated, some fleeing into the neighbor's apartment and some into the Serros apartment. The assailants initially pursued into the neighbor's apartment, but then broke into the Serros residence. At that point, the second assailant was brandishing the pistol. Several shots were fired. Matthew Serros identified Appellant as one of the two men who attempted to take the

groceries from him. Appellant was also identified as the second of the latter two assailants, who ultimately took charge of the pistol and fired at the Serros family members.

The extraneous theft offense directed toward Matthew Serros was clearly admissible as a res gestae component of the indicted criminal charge. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972). The facts of the two incidents are so interwoven as to necessitate admission of evidence of both for a full contextual evaluation of the indicted offense by the jury. *Ward v. State*, 581 S.W.2d 164 (Tex.Crim.App.1979). The close proximity in time and distance between the two supports this res gestae characterization but is not, of course, fully determinative. For example, in *Bush v. State*, 628 S.W.2d 441 (Tex.Crim.App.1982), the defendant was indicted and tried for capital murder of a police officer at the scene of a drugstore burglary. Evidence of the burglary was offered as well as evidence of the defendant's prior abuse of the drug Preludin. The Court of Criminal Appeals held that the burglary evidence was admissible as contextual evidence, relevant to the killing and particularly relevant to the motivation behind the killing. While the prior drug usage may have been motivationally relevant to the burglary, its probative relationship to the killing was too diluted to outweigh the prejudicial effect upon the jury. The attempted theft offense preceding the shooting in this case was relevant to the motivation for the ensuing violent confrontation between Appellant and the theft victim's older brothers. There was no error in admitting evidence of the encounter between Appellant and Matthew Serros. Point of Error No. Two is overruled.

■ In Point of Error No. Three, Appellant contends that the punishment imposed by the trial judge violated the principles expressed in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Appellant initially pleaded guilty to the indictment and was sentenced, in accordance with a probation department recommendation, to twenty-five years' impris-

onment. The conviction upon this plea was overturned by this Court in *Amaya v. State*, 08–86–00048–CR [08–86–00049–CR], March 18, 1987 (unpublished), due to improper plea admonishments. Upon remand, Appellant elected jury trial of the guilt issue but again submitted the matter of punishment to the trial judge. The court assessed punishment at thirty-five years' imprisonment. On the record, the trial judge stated that the seriousness of the criminal conduct had not been as fully developed in the evidentiary presentation accompanying the guilty plea as at the subsequent jury trial. Based upon the more complete evidentiary development, the judge considered the original recommendation and sentence too lenient. No evidence was offered showing any misconduct on the part of Appellant subsequent to the initial imposition of a twenty-five year sentence.

We agree with the principles expressed by the State in addressing *North Carolina v. Pearce* and *Castleberry v. State*, 704 S.W.2d 21 (Tex.Crim.App.1984). The *Pearce* opinion states:

> [W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. On its face, the language cited appears to dictate the result in this case. That result was avoided in *Castleberry* because the new trial did not result from appellate action, a distinction not available in this case.

The right to freely seek appellate review is considered so sacred that the *Pearce* opinion, in effect, creates a rebuttable presumption of judicial vindictiveness and interference with appellate due process where a judicial assessment of punishment increases following a successful appeal. In *Texas v. McCullough*, 475 U.S. 134, 141, 106 S.Ct. 976, 89 L.Ed.2d 104, 112 (1986),

the Supreme Court conceded that the language in *Pearce* unnecessarily restricted the permissible scope of rebuttal, in terms of both law and logic. We can envision at least three situations in which an increase in judicially assessed punishment would be appropriate and in which legitimate judicial motivation could be adequately established in the record to clearly rebut the suspected presence of the evil addressed by *Pearce*.

First, where the first lighter sentence is in the context of a plea of guilty, a heavier post-appeal sentence should be justifiable if based solely upon the principles expressed in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). *Bordenkircher* found no unconstitutional infirmity in offering a lesser sentence in exchange for a guilty plea as opposed to a heavier probable sentence following a contested trial of the guilt issue. The *Bordenkircher* rationale should be equally applicable even when an appellate reversal separates the guilty plea proceeding and a later jury trial/judicial sentencing. *Pearce* may still be satisfied by a record showing that the trial judge is basing the increased punishment on *Bordenkircher* and not as retaliation for the appeal. Thus, in the instant case, if the record reflected that at the time of the original plea proceeding, the judge contemplated a twenty-five year sentence upon a guilty plea but a thirty-five year sentence following conviction by a jury, the danger contemplated by *Pearce* would be adequately rebutted. Similar rebuttal could also be provided by such an expression of trial judge motivation at the ultimate sentencing.

A second justifiable situation would arise where the second, post-appeal evidentiary presentation, whether before judge or jury, cast the defendant or the offense in a much more unfavorable light than in the initial plea proceeding. This scenario should not be restricted to post-sentencing misconduct of the defendant. It should include presentation of newly discovered evidence concerning the offense or the defendant's criminal record, unavailable at the first proceeding, or even simply a fuller presentation of the known facts associated with the indicted offense. That is in fact the rationale expressed by the trial judge in this case. In precluding this type of justification, *Pearce* unnecessarily incorporated a limitation analogous to collateral estoppel or res judicata, both to the State's second evidentiary presentation and the trial judge's discretionary response. Such a result is inconsistent with the traditional effects of reversal, Tex.Code Crim.Pro.Ann. art. 44.29(a) (Vernon Supp.1988) and Tex.R. App.P. 32, and unnecessary to avoid the constitutional impropriety addressed in *Pearce*.

Finally, there is the type of situation similar to *Castleberry*, but with retrial resulting from appellate relief. In *Castleberry*, the initial plea negotiation involved the State's agreement not to pursue an enhancement which would otherwise have raised the statutory minimum sentence above that initially imposed by the court upon the guilty plea. If upon remand, the defendant elects to contest his guilt before a jury, the State should be free from the constraints of the earlier plea bargain. The State's decision to resume the pursuit of the enhancement is justified under *Borderkircher* and, if so, is not an act of prosecutorial vindictiveness. This proper decision by the State would then impose a statutory restriction on the trial judge necessitating a higher sentence totally independent of judicial motivation for good or ill. Judge Onion's *Castleberry* dissent is totally without merit in suggesting a res judicata or jeopardy abondonment of such enhancement in light of Article 44.29(a). *Castleberry*, 704 S.W.2d at 32 n. 2. The "cf" citation to *Garcia v. Dial*, 596 S.W.2d 524 (Tex.Crim.App.1980) offers no support for such proposition.

The trial judge rationale expressed in *McCullough* and sanctioned by the Supreme Court was identical to the motivation expressed by the trial judge on the record in this case. The trial judge's statement clearly rebuts the presumption of judicial vindictiveness targeted by *Pearce*. Point of Error No. Three is overruled.

The judgment is affirmed.